

NUMBERS 13-07-00634-CR
13-07-00635-CR
13-07-00636-CR
13-07-00637-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                                                 **Appellant,**

**v.**

**JOSEPH VOTTA, A/K/A JOSEPH VITAL,**                                        **Appellee.**

### On appeal from the 24th District Court
### of Jackson County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Opinion by Chief Justice Valdez**

The State appeals from the trial court's judgment dismissing the charges against

appellee, Joseph Votta, a/k/a Joseph Vital, based on his not having been brought to trial

within the limitation period specified in Article III of the Interstate Agreement on Detainer's

Act (IADA). *See* TEX. CODE CRIM. PROC. ANN. art. 51.14 (Vernon 2006). The State asserts

five issues on appeal. We affirm.

## I. BACKGROUND

In October 1996, the Jackson County District Attorney's Office indicted appellee on charges of possession of cocaine[1] and possession of heroin.[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 200?). Each indictment referred to appellee by his alias "Joseph Vital." Appellee failed to appear on these charges in November 1996.

In February 1997, the Jackson County District Attorney's Office indicted appellee on charges of bail jumping[3] and failure to appear.[4] Again, each indictment referred to appellee as "Joseph Vital." While these charges were pending, appellee became incarcerated in a federal correctional institution in Minersville, Pennsylvania. On March 11, 2005, the Jackson County Sheriff's department sent a letter to the Minersville federal penitentiary advising it to "please place a detainer on Votta, Joseph, AKA Vital, Joseph." The letter further stated that appellee's outstanding warrants were issued out of the 24th Judicial Court, Jackson County, Texas and relate to the following charges: "Possession of a Controlled Substance in Penalty Group 1, to wit cocaine (Bond Forfeiture) and Possession of a Controlled Substance in Penalty Group 1, to wit, heroin (Bond forfeiture)."

On July 19, 2005 the Jackson County Sheriff's Department received a Detainer Action Letter from the Minersville federal penitentiary advising it that "[a] detainer has been filed against [Joseph Vital] in your favor charging Possession of a Controlled Substance – Cocaine and Heroin." On July 28, 2005, appellee executed a "Request for Final

---

[1] Appellate cause number. 13-07-00636-CR

[2] Appellate cause number. 13-07-00637-CR.

[3] Appellate cause number. 13-07-00634-CR

[4] Appellate cause number. 13-07-00635-CR

Disposition of Detainer" pursuant to the Interstate Agreement on Detainers Act. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14. Two copies of appellee's request were then sent by the Minersville federal penitentiary to the Jackson County District Attorney's Office and the "Jackson County, Clerk of Court." The record shows that both the District Attorney's Office and the county clerk's office received a copy of appellee's request on August 9, 2005, by certified mail.

On November 7, 2005 the Jackson County District Attorney's Office received a letter from the Minersville federal penitentiary advising the district attorney that "90 days have passed since receipt of our paperwork" and that "under the [IADA] the individual must be brought to trial within one-hundred and eighty days from receipt of the IAD paperwork." *See Id.* art III(a). The letter refered to appellee as "Joseph Votta." On February 7, 2006 the Jackson County District Attorney's office received a second letter from the Minersville federal penitentiary advising the district attorney that "more than 180 days have elapsed since [appellee's] request, therefore the IADA has now expired." *See Id.* Again, the letter referred to appellee as "Joseph Votta."

On October 16, 2006, appellee filed a pro se motion to dismiss all four pending charges for failing to bring him to trial within the 180-day period provided by Article III(a) of the IADA. *See id.* A hearing on appellant's motion to dismiss was held on August 30, 2007. On September 28, 2007 the trial court granted appellant's motion to dismiss and signed an order dismissing all four indictments with prejudice. The State subsequently filed a timely notice of appeal.

## II. THE INTERSTATE AGREEMENT ON DETAINERS ACT

By its second and third issues, the State argues that appellee failed to comply with

the provisions regarding his request for final disposition of charges pursuant to the IADA. By its fourth and fifth issues, the State contends that the trial court erred in dismissing its failure to appear and bail jumping indictments because no detainer was ever lodged with respect to those charges. Because these issues overlap, we will consider them together.

## A. Standard of Review

We conduct a *de novo* review of the legal question of whether there has been compliance with the requirements of the IADA. *Walker v. State*, 201 S.W.3d 841, 845 (Tex. App.–Waco 2006, pet. ref'd); *State v. Miles*, 101 S.W.3d 180, 183 (Tex. App.–Dallas 2003, no pet.); *Lindley v. State*, 33 S.W.3d 926, 930 (Tex. App–Amarillo 2000, pet. ref'd). We review any factual findings underlying the issue of compliance with the IADA under a clearly erroneous standard. *Walker*, 201 S.W.3d at 845; *Miles*, 101 S.W.3d at 183; *Lindley*, 33 S.W.3d at 930.

## B. Applicable Law

The IADA is a congressionally-sanctioned compact between the United States and the states and is subject to federal construction. *Cuyler v. Adams*, 449 U.S. 433, 442 (1981); *Espinoza v. State*, 949 S.W.2d 10, 11 (Tex. App.–San Antonio 1997, pet. ref'd); *Miles*, 101 S.W.3d at 184 n.2. This agreement allows prosecutors in one jurisdiction to acquire the presence of defendants imprisoned in other jurisdictions for trial prior to the expiration of their sentences. *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001); *New York v. Hill*, 528 U.S. 110, 111 (2000); *see State v. Williams*, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997); *State v. Sephus*, 32 S.W.3d 369, 375 (Tex. App.–Waco 2000, pet. ref'd). After the prosecutor places a detainer on a prisoner, that prisoner may request speedy disposition of the charges under Article III of the IADA. *See Fex v. Michigan*, 507 U.S. 43,

4

44 (1993) (defining detainer as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent."); *accord Miles*, 101 S.W.3d at 183. Once notified of the prisoner's request, the prosecutor has 180 days to bring the prisoner to trial. If the prosecutor exceeds those 180 days, the charges are dismissed with prejudice, and the detainer becomes invalid. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a), (c); *see also Walker*, 201 S.W.3d at 845.

To request final disposition under IADA article III, the defendant must cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment . . . " TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a); *see Walker*, 201 S.W.3d at 846*; Lindley*, 33 S.W.3d at 929. The request must be accompanied by a certificate of the appropriate official having custody of the prisoner stating: the term of commitment under which the prisoner is being held; the time already served; the time remaining to be served on the sentence; the amount of good time earned; the time of parole eligibility of the prisoner; and any decision of the state parole agency relating to the prisoner. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a). The IADA provides that the defendant can satisfy the requirement for sending the written notice and request for final disposition under article III by giving it to the official having custody of him, who must then forward it to the appropriate prosecuting official and court via registered or certified mail. *Id*. art. III(b).

## C. Analysis

It is undisputed that the Minersville correctional facility sent appellee's request for

final disposition to the prosecuting attorney of Jackson County. It is further undisputed that a copy of appellee's request was received by the Jackson County county clerk's office. The State argues that, because it was the county clerk rather than the district clerk that signed for and received appellee's IADA paperwork, appellant therefore failed to comply with the IADA's requirement that he deliver his request to the "appropriate court of the prosecuting officer's jurisdiction." *Id*. art III(a). We are skeptical of the State's argument, especially in light of witness testimony that seemed to indicate that paperwork erroneously filed in the county clerk's office will usually get filtered to the district clerk's office. However, we need not address the issue.[5]

In *Fex v. Michigan*, the United States Supreme Court held that article III(a)'s 180-day period does not begin until the request for final disposition of charges is actually received by the court and the prosecutor of the jurisdiction where the charges are pending. *See Fex*, 507 U.S at 52; *accord Lindley*, 33 S.W.3d at 929-30; *Walker*, 201 S.W.3d at 844. Attached to appellee's motion to dismiss is a copy of appellee's IADA paperwork that was initially received by the county clerk's office on August 9, 2005. Appellee's motion to dismiss was filed with the district clerk's office on October 16, 2006. A hearing was not held on appellee's motion until August 30, 2007, 318 days later. According to *Fex*, article III(a)'s 180 day period begins when the prisoner's request is actually received by the trial court. *See Fex*, 507 U.S. at 52. Here, the court received appellee's request when he filed his motion to dismiss with his IADA paperwork attached. The record clearly shows that both the trial court and the Jackson County District Attorney had appellee's request on file for more than the 180-day period allotted by article III(a) of the IADA. *See United States*

---

[5] At the hearing on appellee's motion to dismiss, appellee elicited testimony from employees of the district and county clerk's office.

6

*v. Daily*, 488 F.3d 796, 801 (8th Cir. 2007) (finding IADA 180-day period did not commence until prosecutor and trial court received the appellant's request for final disposition through his motion to dismiss). We hold that appellee has satisfied his burden of proving that his IADA request was received by the prosecuting officer and the appropriate court of the prosecutor's officer's jurisdiction. *Id*.

The State further argues that appellee failed to comply with the procedural requirements of IADA because he submitted his request for final disposition under his real name "Joseph Votta" and not "Joseph Vital;" the alias used by appellee when he was first arrested by the Jackson County Sheriff's department for the possession of cocaine and heroin charges. The record indeed shows that appellee submitted his IADA paperwork under the name Joseph Votta and, although his certificate of inmate status refers to his pending possession of cocaine and heroin charges, no reference to the corresponding indictment numbers are made. The State contends that "to say that this was sufficient notice to the prosecutor is to allow a prisoner to give notice under a different name and throw the burden on the prosecutor to investigate to try to find out who the notice referred to and what cases the prisoner wanted to dispose of." The State's argument is persuasive, and while we would undoubtedly be critical of any prisoner who intentionally used obstructionist tactics, such as altered names, to circumvent the IADA and avoid prosecution, the situation here does not fall into such a category. The record shows that the State lodged its detainer against appellee on March 5, 2005, when it sent correspondence to the Minersville federal penitentiary asking that appellee be detained for outstanding warrants. The letter sent by the State refers to appellee as "Votta, Joseph, AKA Vital, Joseph." In response, the Minersville prison sent a "detainer action letter" to the Jackson County Sheriff's Department informing it that a detainer had been filed against

7

inmate "Votta, Joseph, alias Vital, Joseph."  Thus, the record clearly shows that the State was aware of appellee's real name and alias.  The fact that appellee submitted his IADA paperwork under the name "Joseph Votta" does not defeat his IADA speedy-trial claim.

As an alternative argument, the State contends that because no detainer was filed with regard to its bail jumping and failure to appear indictments, the trial court erred in dismissing those charges pursuant to the IADA.  Article III of the IADA applies exclusively to "untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner." TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III (a).  This section has been interpreted to mean that the 180-day time period, and thus the dismissal requirement, is limited to pending charges upon which the detainer is based.  *See United States v. Sanders*, 669 F.2d 609, 610 (9th Cir. 1982) (180-day limit of IADA applies only to charges pending at the time the detainer is filed); *Espinoza v. State*, 949 S.W.2d 10, 12-13 (Tex. App.–San Antonio 1997, pet. ref'd) (same).  Here,  the detainer lodged by the State identified appellee's pending charges in the following manner:  "Possession of a Controlled Substance in Penalty Group 1, to wit cocaine (Bond Forfeiture) and Possession of a Controlled Substance in Penalty Group 1, to wit, heroin (Bond forfeiture)."  The fact the State listed "Bond Forfeiture" as a pending criminal charge clearly shows its intent to prosecute appellee on the pending bail jumping and failure to appear indictments.  *See Kubosh v. State*, 241 S.W.3d 60, 64 (Tex. Crim. App. 2007) (recognizing bond forfeiture as a criminal matter).

We conclude that appellee satisfied his burden of proving compliance with the requirements of article III.  *See Walker*, 201 S.W.3d at 846; *Lindley*, 33 S.W.3d at 930.  Issues two through five are overruled.

8

### III.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

By its first issue, the State contends the trial court erred in failing to make findings of fact and conclusions of law after being requested to do so.  Relying on *Cullen v. State*, 195 S.W.3d 696 (Tex. Crim. App. 2006), the State contends that "the failure of the trial court to act and make findings of fact and conclusions of law effectively denies the State the right to an appeal based upon what facts are actually found by the trial court as opposed to what this court might guess the trial court found the facts to be."

In *Cullen*, the Texas Court of Criminal Appeals held that "upon the request of the losing party on a motion to suppress evidence, the trial court . . . must make findings of fact and conclusion of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts."  *Id*. at 699.  We do not believe the reasoning supporting the court's holding in *Cullen* applies in this case.

When ruling on a motion to suppress evidence, a trial court generally makes credibility decisions and factual determinations about disputed historical events.  On appeal, if the trial court had not made findings of fact, the appellate court must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."  *Id*. at 698.  In *Cullen*, the State argued that its right to appeal an order granting a motion to suppress is thwarted when appellate review of the order is based on presumed facts rather than findings of actual facts.  *Id*. at 697.  The court agreed, stating "the trial court's refusal to act prevented the court of appeals from meaningful review of the decision to grant the motion to suppress.  Without findings of fact and conclusions of law, the court of appeals was left in the undesirable position of having to make assumptions

9

about the reasons for the trial court's decision." *Id*. at 698.

In contrast, as previously noted, where a prisoner has requested final disposition of a pending case in another jurisdiction, to show compliance with the Act, he need only show that proper notice was sent to the "prosecuting officer" and to the "appropriate court of the prosecuting officer's jurisdiction" via certified mail. *See id*. art III(a), (b). Whether a prisoner has met his burden of demonstrating compliance with the procedural requirements of the act, requires few, if any, credibility determinations and, as shown above, is decided primarily by a facial review of the documents provided by the prisoner. The trial court's failure to make findings did not require us to make any assumptions about the facts or the reasons for the trial court's decision. Nor do we find that the State has been prevented from presenting its grounds for review. Accordingly, the trial court's failure to make findings and conclusions was not error. The State's first issue is overruled.

## IV. CONCLUSION

We affirm the trial court's order dismissing the State's possession of cocaine (appellate cause number 13-07-00636-CR), possession of heroin (appellate cause number 13-07-00637-CR), bail jumping (appellate cause number 13-07-00634-CR), and failure to appear (appellate cause number 13-07-00635-CR) indictments.

_____
ROGELIO VALDEZ
Chief Justice

Publish.
TEX. R. APP. P. 47.2(b).
Opinion delivered and filed
this the 26th day of June, 2008.

10