

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD–1366-08, 1367-08, 1368-08, 1369-08

**THE STATE OF TEXAS**

**v.**

**JOSEPH VOTTA, A/K/A JOSEPH VITAL,[1] Appellee**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE 13TH COURT OF APPEALS
JACKSON COUNTY**

**MEYERS, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellee, Joseph Votta, was charged with two counts of possession and two

counts of bail jumping and failure to appear. Because he was incarcerated in a federal

facility while these charges were pending, he sought a speedy disposition under the

Interstate Agreement on Detainers Act (IADA). When the State failed to bring Appellee

---

[1]The State's petition for discretionary review styled Appellee as JOSEPH VITAL, A/K/A JOSEPH VOTTA. In order to be consistent with the court of appeals and clarify the title of the case, we will proceed under the name JOSEPH VOTTA, A/K/A JOSEPH VITAL.

to trial within the 180-day limitation period set out in the IADA, the charges against him were dismissed with prejudice. The State appealed the dismissal, and the court of appeals affirmed the decision of the trial court. *State v. Votta, A/K/A Joseph Vital*, 267 S.W.3d 197 (Tex.App.-Corpus Christi 2008). The State filed a petition for discretionary review raising seven grounds for review. We reverse the court of appeals.

**Facts**

Appellee was arrested in Jackson County and charged with possession of cocaine and possession of heroin. He told the police his name was Joseph Vital, and this is the name under which he was indicted. He posted bond, but later failed to appear for the charges. As a result, he was also indicted, under the name Joseph Vital, for two counts of bail jumping and failure to appear.

While these charges were pending, Appellee was convicted of a federal crime and incarcerated in the federal correctional facility in Minersville, Pennsylvania, under his real name, Joseph Votta. The Jackson County Sheriff's Department located Appellee and sent a letter asking the institution to place detainers on him. The letter identified Appellee as "Votta, Joseph, aka Vital, Joseph" and listed the warrants as "Possession of a Controlled Substance in Penalty Group 1, to-wit cocaine (Bond Forfeiture) and Possession of a Controlled substance in penalty group 1, to-wit Heroin (Bond Forfeiture)." The only cause numbers listed were for the possession charges.

The Inmate Systems Manager at the federal correctional facility received the

detainers from the Jackson County Sheriff's Department and replied with a detainer action letter informing the Jackson County Sheriff's Department that the detainer had been filed for both possession charges against Joseph Votta, alias Joseph Vital. This letter was dated July 19, 2005, and did not mention bond forfeiture or bail jumping and failure to appear.

On July 28, 2005, Appellee requested final disposition of the detainer pursuant to the IADA. The Inmate Systems Manager at the Minersville federal penitentiary sent, by certified mail, a letter to the Jackson County District Attorney's Office, with a notation on the bottom: "CC: Clerk of Court." The certified-mail return-receipt cards were sent to the District Attorney and to "Jackson County, Clerk of Court." In the letter, Appellee was identified as Joseph Votta, and only the possession counts were listed with no cause numbers included. The letter was received by the district attorney's office and the Jackson County clerk's office on August 4, 2005[2]. However, the *district* clerk's office, where Appellee's charges were pending, did not receive the request. The Inmate Systems Manager sent a letter on November 7, 2005, reminding the district attorney that 90 days had passed since the receipt of Appellee's request for disposition of untried charges under the IADA, and that an individual must be brought to trial within 180 days from the date of receipt of this paperwork. On February 7, 2006, the Inmate Systems Manager sent

---

[2] The court of appeals says that the letter was received on August 9th, however that is actually the date that Minersville received the return receipts that were signed for by the Jackson County clerk and the district attorney's office on August 4th.

another letter to the district attorney to inform him that 180 days had elapsed since Appellee's request and that the detainers had expired. Both letters referred to Appellee only as Joseph Votta and did not include cause numbers.

On October 16, 2006, Appellee filed a motion with the Jackson County District Court to dismiss all four counts for failure to comply with the 180-day deadline mandated by the IADA. Both names, Joseph Vital and Joseph Votta were listed within the motion and copies of the IADA paperwork that had been previously sent to the county clerk's office were attached as exhibits. The district attorney was not provided a copy of the motion.

After a hearing, the trial court dismissed the indictments in all four of the pending causes with prejudice on August 30, 2007. The State filed a motion for reconsideration, a motion requesting that the court enter findings of facts and conclusions of law, and requested a hearing on its motions. Although a hearing was scheduled for September 13, 2007, the trial court cancelled the hearing. In response, the State filed a second motion for the trial court to enter findings of fact and conclusions of law. When no findings of fact and conclusions of law were entered, the State filed a reminder of the court's obligation to file findings of fact and conclusions of law. The trial court entered its final order dismissing all charges on October 2, 2007. The State subsequently filed a notice of past-due findings of fact and conclusions of law pursuant to Rule 297 of the Texas Rules of Civil procedure, but no findings of fact or conclusions of law were ever entered.

**Court of Appeals**

The State appealed the trial court's order dismissing the indictments. *Votta, A/K/A Joseph Vital*, 267 S.W.3d 197. The State argued that Appellee failed to comply with IADA's requirement that he deliver his request to the appropriate court. The court of appeals disagreed, stating that Appellee showed that both the trial court and the Jackson County District Attorney had his request on file for more than 180 days prior to the hearing on the motion to dismiss. *Id*. at 202.[3] The State also argued that Appellee failed to provide sufficient notice to the trial court because his request for disposition was filed under his real name, "Joseph Votta," and not the alias he used when he was arrested, "Joseph Vital." The court of appeals again disagreed, noting that the correspondence between the state and the prison contained both Appellee's real name and the alias he had used, thus the state was aware of who was submitting the speedy-disposition request. *Id*.

The State claimed that the trial court erred in dismissing the charges for bail jumping and failure to appear because no detainer was filed related to those indictments. However, the Court of Appeals determined that by listing "Bond Forfeiture" when it identified Appellee's possession charges,[4] the State "clearly shows its intent to prosecute

---

[3] The court of appeals noted that a copy of Appellee's IADA paperwork was attached to the motion to dismiss that was filed with the District Clerk's office on October 16, 2006, and the hearing was not until 318 days later, on August 30, 2007.

[4] The State identified the pending charges as "Possession of a Controlled Substance in Penalty Group 1, to wit, cocaine (Bond Forfeiture) and Possession of a Controlled Substance in Penalty Group 1, to wit, heroin (Bond Forfeiture)"

appellee on the pending bail jumping and failure to appear indictments." *Id*. at 203.

Citing our holding in *Cullen v. State*, 195 S.W.3d 696 (Tex. Crim. App. 2006), the State claimed that the trial court erred in failing to enter findings of fact and conclusions of law. The court of appeals concluded that because the trial court's determination did not require credibility determinations, but rather relied only on a facial review of the documents provided by the prisoner, *Cullen* did not apply in this case. Additionally, the trial court's failure to enter findings did not require the court of appeals to make any assumptions about the facts of the case or about the reasons for the trial court's decision. Therefore, the State was not prevented from presenting the appeal. The court of appeals affirmed the judgment of the trial court and held that the trial court did not err in failing to file findings of fact. The State's motion for rehearing was denied. *Votta*, 267 S.W.3d at 204.

The State filed a petition for discretionary review, which we granted to consider the following grounds for review:

> 1) Did the Court of Appeals err in refusing to require the trial court to enter findings of fact and conclusions of law?

> 2) Did the Court of Appeals err in concluding that respondent made a proper request for final disposition of charges, as required by Art. 51.14, V.A.C.C.P. to both the prosecuting officer and the appropriate court as is required to invoke the jurisdiction of that act and authorize the trial court to dismiss pending indictments?

> 3) Did the Court of Appeal err in concluding that Respondent's request for final disposition of charges under a name other than the name under which he is charged

is sufficient to give the prosecutor notice of Respondent's request?

4) Did the Court of Appeals err in concluding that a motion filed by Respondent seeking dismissal of charges constituted compliance under article 51.14, V.A.C.C.P. as a request to be returned to the State of Texas for final disposition of pending charges?

5) Did the Court of Appeals err in concluding that the trial court had authority to dismiss Cause Nos. 97-2-5827 and 97-2-5828 (for bailing jumping and failure to appear) under the requirement of article 51.14 that only causes which were subject to detainers could be dismissed?

6) Did the Court of Appeals err in concluding that detainers were filed against Respondent in Cause Nos. 97-2-5827 and 97-2-5828 (for bailing jumping and failure to appear indictments)?

7) Did the Court of Appeals err in concluding that reference to "bond forfeiture" constituted placing a detainer on Respondent under art. 51.14, V.A.C.C.P.?

**The Interstate Agreement on Detainers Act**

In Code of Criminal Procedure Article 51.14, Texas adopts The Interstate Agreement on Detainers Act, which outlines the cooperative procedure between the states to be used when one state is seeking to try a prisoner who is currently imprisoned in a penal or correctional institution of another state. The state with an untried indictment, information, or complaint against the prisoner files a detainer with the institution in the state that is holding the prisoner.[5] The prison is required to promptly inform the prisoner

---

[5]A detainer is a request by a criminal justice agency that is filed with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent. *Fex v. Michigan*, 507 U.S. 43, 44

that a detainer has been filed against him and that he has the right to request final disposition of the charges. TEX. CODE CRIM. PROC. ANN. art. 51.14 Art. III (c). The prisoner may then request final disposition by giving written notice to the warden, who forwards the request, along with a certificate containing information about the prisoner's current confinement, to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction.[6] Under Article III(a), the prisoner must then be brought to trial in the receiving state within 180 days from the date on which the prosecuting officer and the appropriate court receive this written request for a final disposition, unless a continuance is granted under the IADA. TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a) (Vernon 2006). If the prisoner is not brought to trial within 180 days, the trial court must dismiss the indictment with prejudice. TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(d) (Vernon 2006).

**Grounds 1, 2, and 3**

In its first ground for review, the State argues that the court of appeals erred in failing to require the trial court to enter findings of fact and conclusions of law. Under similar circumstances, the State in *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App.

(2003).

[6]Under Texas Code of Criminal Procedure article 51.14, articles III(a) and (b) of the IADA specify that the request and certificate must be sent by the warden, commissioner of corrections, or other official having custody of the prisoner, to the prosecuting official and the appropriate court by registered or certified mail, return receipt requested.

2006), requested that findings of fact and conclusions of law be entered into the record, but the trial court refused. We stated, "The refusal of trial courts to enter findings of fact when timely requested by the State leaves appellate courts with nothing to review except a one-word ruling and forces the courts of appeals to make assumptions about the trial court's ruling. The ruling could be based on a mistake of law, on the trial court's disbelief of the testimony presented, or even on a clerical error."[7] *Id.* at 698.

The court of appeals held that *Cullen* does not apply in this situation because looking at the face of the documents to determine compliance with the IADA did not require an examination of the credibility of the witnesses, so it was not necessary for the trial court to enter findings of fact and conclusions of law.

We agree that in some cases involving the IADA, a court may determine whether the prisoner complied with the requirements of the IADA and whether the 180-day period was exceeded by simply examining the date the prisoner's request for disposition was received, the date of the prisoner's motion to dismiss, and the date of the trial or hearing for those charges. However, this case did not involve merely an examination of paperwork to determine whether the requirements of the IADA were met. Credibility was an issue at the hearing because four witnesses testified to different versions of the facts of the case.

---

[7]We acknowledge that the case before us relates to a hearing on a motion to dismiss rather than a suppression hearing, however the reasoning from *Cullen* is still applicable.

First, the trial court had to determine whether the appropriate court received the request for final disposition of the charges. The district clerk testified that she did not have the request on file and did not remember receiving it except when it was attached as an exhibit to the motion to dismiss. The deputy county clerk, who actually received the document, testified that she could not recall getting any mail that was sent to the district attorney and that she did not know what happened with the paperwork once it left her office. But, she noted that paperwork sent to the wrong office would normally be redirected to the correct recipient. The county clerk also testified, but said that he could only speculate that the documents may have been given to the district clerk if they were received by the county clerk's office. Most importantly, the trial judge specifically stated at the hearing that he was not making a finding that a letter addressed to the district attorney would have gone to the district clerk because it said "CC clerk of court" on the bottom. And, the defense stipulated at the hearing that the request for final disposition of the charges was not delivered to the district court. Thus, from the record, it appears that the documents were not received by the required parties.

Whether Appellee's request for disposition provided proper notice was also a contested issue. At the hearing, the district attorney raised the issue that Appellee's alias, Vital–which is the name under which the charges against him were filed–was not listed on the request for disposition that was sent to the district attorney. Appellee testified that he often used aliases to get out on bail and admitted that he did not include his alias on

the IADA paperwork. However, the court of appeals concluded that, because the sheriff listed Appellee's alias on the detainer sent to the prison, the State knew Appellee's actual name and alias. The court of appeals also determined that Appellee did not use obstructionist tactics, such as altered names, to circumvent the IADA and avoid prosecution. We are unsure how the court of appeals ascertained this without findings of fact by the trial court based on the observation of the credibility and demeanor of the witness.

Finally, Appellee testified that detainers had been filed against him for only the two possession charges. The court of appeals, however, held that detainers had also been placed on Appellee for his two bail jumping and failure to appear charges based on the "bond forfeiture" notation on the detainer letter.

The reasoning of the court of appeals would mean that the trial court believed Appellee's testimony that the State knew his alias, and that he filed his IADA paperwork in the proper court, but that the trial court did not believe him that detainers were filed against him for only the possession charges.

The court of appeals erred in failing to require the trial court to enter findings of fact and conclusions of law. Without such findings from the trial court, the court of appeals could not determine whether Appellee's request for disposition of the charges was properly received by both the prosecuting officer and the appropriate court, or whether the IADA paperwork provided sufficient notice although it listed a name

different from that under which Appellee was charged.

**Ground 4**

The petitioner in *Fex v. Michigan*, 507 U.S. 43 (1993), argued that the 180-day period in the IADA begins when the prisoner gives his request for final disposition to prison officials. The Supreme Court disagreed, reasoning that, since Article III(b) requires the warden to forward the prisoner's request and accompanying documents by registered or certified mail, return receipt requested, the IADA "provides for documentary evidence of the date on which the request is delivered to the officials of the receiving State, but requires no record of the date on which it is transmitted to the warden." *Id.* at 51. Thus, the Supreme Court held that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Id.* at 52.

Here, the court of appeals determined that the district clerk properly received Appellee's request for disposition when he filed a motion to dismiss and included copies of his IADA paperwork attached as exhibits. Consequently, both the prosecutor and the court had Appellee's request for more than 180 days prior to the hearing on the motion to dismiss, which was not until 318 days after the district court received these documents. The court of appeals relied on *United States v. Daily*, 488 F.3d 796, 797-98, 801 (8th Cir. 2007), which said that the defendant had not complied with IADA notice requirements

prior to the filing of his motion to dismiss. Before Daily filed a motion to dismiss, his written notice of a request for dismissal had been received only by the warden, who had not sent it to the court and prosecuting officer. The hearing was held more than 180 days from the date he gave his request to the warden, but within 180 days of the date the proper courts received his motion to dismiss. Daily argued that the 180-day period should begin when the request for disposition is given to the warden, but the court disagreed and held that since the hearing was within 180 days of the motion to dismiss, which was the first time the prosecutor and trial court knew of the request, the hearing was held within time allowed under IADA.

While *Daily* determined that the hearing in that case was properly held within the 180-day period allotted by the IADA, it did not say that a motion to dismiss constitutes proper notice of a request for disposition in all situations. The State points out that a motion to dismiss is clearly not a request to waive extradition and stand trial, which is the purpose of the IADA. Therefore, it makes no sense to say that a motion to dismiss charges constitutes proper notice of a desire to stand trial. We agree. Appellee's motion to dismiss the charges was not proper notice to the district court of his request for disposition. The court of appeals erred in holding that the district court received Appellee's request for disposition.

**Grounds 5, 6, 7--Bail Jumping and Failure to Appear**

The State argues that the court of appeals erred in concluding that the reference to

bond forfeiture on the detainers for the possession charges constituted a detainer for bail jumping. And, since no detainers were filed for the bail jumping and failure to appear charges, the trial court did not have the authority to dismiss those causes.

We agree. There is nothing in the record indicating that detainers were filed for the bail jumping and failure to appear charges. The parenthetical bond forfeiture on the detainers for the possession charges is in no way sufficient to constitute a detainer for charges of bail jumping and failure to appear. While failing to appear in court does automatically result in the forfeiture of a bond, a defendant can have bond forfeited in a case without being charged with bail jumping and failure to appear. Under Chapter 22 of the Code of Criminal Procedure, bond forfeiture is a judgment, entered when a defendant fails to appear in court, which states that the State of Texas shall recover the amount of money by which the defendant is bound. Bail Jumping and Failure to Appear is a completely separate offense under Penal Code Section 38.10. Additionally, a defendant can be charged with Bail Jumping and Failure to Appear even if he were released from custody without bail, thus making him ineligible for a bond-forfeiture judgment. The court of appeals erred in holding that a notation regarding bond forfeiture showed the State's intent to prosecute Appellee for bail jumping and failure to appear. Therefore, the court of appeals's conclusion that detainers were filed for bail jumping and failure to appear is also erroneous. Because detainers were not filed for these charges, the court of appeals erred in dismissing them.

**Conclusion**

The court of appeals erred in failing to require the trial court to enter findings of fact and conclusions of law. Without findings, the court of appeals erred in concluding that the prosecuting officer and the appropriate court properly received notice of Appellee's request for disposition even though it was sent under a different name than that under which the charges were filed and to the county court rather than the district court where charges were pending. The court of appeals also erred in concluding that a motion to dismiss constituted proper notice of a request for disposition in the district court. Finally, we hold that no detainers were filed against Appellee for bail jumping and failure to appear, so the court of appeals had no authority to dismiss those charges.

The judgments of the court of appeals are reversed, and the case is remanded to the trial court for trial.

Meyers, J.

Delivered: December 16, 2009

Publish