

NUMBER 13-12-00654-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

NASIRU MUHAMMED USMAN
A/K/A MUHAMMED NASIRU
USMAN,                                                          **Appellant,**

**v.**

THE STATE OF TEXAS,                                           **Appellee.**

---

**On appeal from the 297th District Court
of Tarrant County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria
Memorandum Opinion by Justice Longoria**

By two issues, appellant, Nasiru Muhammed Usman, appeals his conviction for

theft of property the value of which is $20,000 or more but less than $100,000, a third-

degree felony, *see* TEX. PENAL CODE ANN. § 31.03(e)(5) (West Supp. 2011), enhanced to a second-degree felony for purposes of punishment because (1) appellant was a public servant at the time of the offense and the property appropriated came into his custody, possession, or control by virtue of his status as a public servant, (2) appellant was in a contractual relationship with the government at the time of the offense and the property appropriated came into his custody, possession, or control by virtue of the contractual relationship, and (3) the owner of the property appropriated was at the time of the offense an elderly individual. *Id.* § 31.03(f)(1)–(3)(a). We affirm.

## I. BACKGROUND[1]

On July 16, 2009, appellant was indicted on the charge of theft by a public servant in an amount between $20,000 and $100,000. *See id.* On January 24, 2011, while incarcerated in federal prison on an unrelated charge, appellant mailed a "Notice/Request for Final Disposition Pursuant to Interstate Agreement on Detainers" to the Tarrant County District Clerk's Office. Thereafter, appellant was returned to Tarrant County and made an appearance to face the charge on June 28, 2012. On July 19, 2012, appellant filed a "Motion to Dismiss Due to Delay under Interstate Agreement on Detainers."

On August 23, 2012, the trial court held a hearing on appellant's motion to dismiss. During the hearing, appellant made an oral motion to dismiss on the additional grounds that his constitutional rights to a speedy trial had been violated. The court

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

overruled the motions. Thereafter, on September 14, 2012, appellant entered into a plea bargain and was sentenced to incarceration for two years. This appeal ensued.

## II. INTERSTATE AGREEMENT ON DETAINERS ACT

In his first issue, appellant argues that the trial court erred in denying his motion to dismiss under the Interstate Agreement on Detainers Act ("IADA").

### A. Applicable Law

"In Code of Criminal Procedure Article 51.14, Texas adopts [t]he . . . [IADA], which outlines the cooperative procedure between the states to be used when one state is seeking to try a prisoner who is currently imprisoned in a penal or correctional institution of another state." *State v. Votta*, 299 S.W.3d 130, 134–35 (Tex. Crim. App. 2009). "The state with an untried indictment, information, or complaint against the prisoner files a detainer with the institution in the state that is holding the prisoner." *Id*.[2] "The prison is required to promptly inform the prisoner that a detainer has been filed against him and that he has the right to request final disposition of the charges." *Id*. (citing TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(c)). "The prisoner may then request final disposition by giving written notice to the warden, who forwards the request, along with a certificate containing information about the prisoner's current confinement, to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction." *Id*.[3] "Under Article III(a), the prisoner must then be brought to trial

---

[2] "A detainer is a request by a criminal justice agency that is filed with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *State v. Votta*, 299 S.W.3d 130, 135 n.5 (Tex. Crim. App. 2009).

[3] "Under Texas Code of Criminal Procedure article 51.14, articles III(a) and (b) of the IADA specify that the request and certificate must be sent by the warden, commissioner of corrections, or other official having custody of the prisoner, to the prosecuting official and the appropriate court by registered or certified mail, return receipt requested." *State v. Votta*, 299 S.W.3d 130, 135 n.6 (Tex. Crim. App. 2009).

in the receiving state within 180 days from the date on which the prosecuting officer and the appropriate court receive this written request for a final disposition, unless a continuance is granted under the IADA." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a)). "If the prisoner is not brought to trial within 180 days, the trial court must dismiss the indictment with prejudice." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(d)).

## B. The Evidence

Appellant testified that, on some unspecified date while he was incarcerated in federal prison, he filled out the "paperwork" for his IADA demand with the help of a prison employee who functioned "kind of like [a] legal assistant." Appellant further testified that, upon completing the paperwork, he told the employee that he wanted it sent to the trial court. The employee said that appellant could "send it out" himself.

Defense Exhibit 1, appellant's "Notice/Request for Final Disposition Pursuant to Interstate Agreement on Detainers," was addressed to "Tonya Harlan," the "Prosecuting Officer 213th and 297th District Court of Tarrant County." The "Notice/Request" was signed by appellant and dated "06/14/2011" and file marked by the Tarrant County District Clerk on "June 24, 2011." The "Notice/Request" is not accompanied by a certificate of the appropriate official having custody of the prisoner stating the terms of commitment, the time already served, the time remaining on the sentence, the amount of good time earned, the time of parole eligibility, and any decision of the state parole agency relating to the prisoner, as required by the statute. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a). The accompanying cover letter was addressed only to the district clerk.

4

State's Exhibit 1 consists of a mailing envelope addressed to "Joe Shannon, Jr., Tarrant County Criminal District Attorney." Its postmark indicates that it was mailed on April 30, 2012. It is stamp-marked "received," and the date "5/8/12" is handwritten in the box below the stamp mark. The return address in the upper left corner is the "Federal Bureau of Prisons," and a "certified mail" bar code is attached to the envelope.

State's Exhibit 1 also includes a cover letter dated April 18, 2012 from M. Cruz, the warden of the federal prison in Seagoville, Texas, to "Joe Shannon, Jr.," explaining that "the above referenced defendant has requested disposition of pending charges in your jurisdiction pursuant to the Interstate Agreement on Detainers Act. Necessary forms are attached." The letter was stamped "received" with the date "5/8/12" handwritten beneath the stamp. The forms include an "IAD – Certificate[] of Inmate Status" that reflects appellant's term of confinement, the time appellant had already served, the time remaining on appellant's sentence, the amount of good time earned by appellant, the time of appellant's parole eligibility, and that the U.S. Parole Commission's decision on appellant was "n/a."

## C. The Trial Court's Findings

The trial judge observed that although the second page of Defense Exhibit 1 contained the typed name of the prosecutor, the cover letter indicated that it had been sent to the district clerk, and the judge did not "see any notations or other evidence that it was actually sent on to the district attorney's office." The court also noted that the exhibit "does not appear to be accompanied by the statement that is required by the statute."

In addition, the trial judge observed that State's Exhibit 1, in contrast, "appears to have been mailed on April 20th of 2012, received May 8 of 2012." Both dates, the court calculated, were less than 180 days before the hearing. Furthermore, the trial judge also observed that "State's Exhibit No. 1 does appear to be accompanied by the information required under the statute."

## D. Discussion

The trial court found that the first request for extradition under the IADA was not sent to the "appropriate official," the district attorney, in compliance with the IADA. The court further found that the district attorney received notice and the required certification on May 8, 2012, within 180 days of trial. In light of these findings, we agree with the State that the trial court did not err in denying the motion to dismiss because the timeline under the statute did not start to run until May 8, 2012, when appellant had complied with the IADA. *See Fex v. Michigan*, 507 U.S. 43, 52 (1993) ("We hold that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."); *State v. Garcia*, 361 S.W.3d 244, 246 (Tex. App.—Amarillo 2012, no pet.) ("[T]he missing information was not actually received by the district attorney until August 13, 2010. So, the requisite deadline did not begin until that date, and trying appellee on February 7, 2011, was timely"); *Lara v. State*, 909 S.W.2d 615, 618 (Tex. App.—Fort Worth 1995, pet. ref'd) ("Our reading of appellant's August, 1993, letter indicates he made no attempt to include the required information. We find the trial court

6

did not err by finding the August, 1993, letter was insufficient to begin running the 180-day period under the IAD.").

Appellant's first issue is overruled.

### III. CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL

In his second issue, appellant argues that the trial court erred in denying his motion to dismiss based on his rights to a speedy trial under the federal and state constitutions.

### A. Applicable Law

"The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (referencing U.S. CONST. amend. VI). "A speedy trial protects three interests of the defendant: freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense." *Id.*

"The right attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Id.* "Supreme Court precedent requires state courts to analyze federal constitutional speedy-trial claims on an ad hoc basis by weighing and then balancing the four *Barker v. Wingo* factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused." *Id.* (quotations omitted).[4] "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice."

---

[4] "TEX. CONST. art. I, § 10 also guarantees the accused in all criminal prosecutions the right to a speedy and public trial." *Cantu v. State*, 253 S.W.3d 273, 281 n.16 (Tex. Crim. App. 2008). "This right exists independently of the federal guarantee, but this Court analyzes claims of a denial of the state speedy-trial right under the same four *Barker* factors." *Id.*

*Id.* "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.* "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

"The *Barker* test is triggered by a delay that is unreasonable enough to be 'presumptively prejudicial.'" *Id.* at 281. "There is no set time element that triggers the analysis, but . . . [the Texas Court of Criminal Appeals has] held that a delay of four months is not sufficient while a seventeen-month delay is." *Id.* "Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant." *Id.* (quotations omitted). "No one factor is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* "Instead, the four factors are related and must be considered together along with any other relevant circumstances." *Id.* "As no factor possesses 'talismanic qualities, courts must engage in a difficult and sensitive balancing process in each individual case." *Id.* (quotations omitted).

"Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated." *Id.* "Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." *Id.* (quotations omitted). "Thus, courts must apply the *Barker* balancing test with common sense and

sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

## B. Standard of Review

"In reviewing the trial court's ruling on appellant's federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Id.* at 282 (quotations omitted). "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question." *Id.* (quotations omitted).

"Under the abuse of discretion standard, appellate courts defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts." *Id.* "In assessing the evidence at a speedy-trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted." *Id.* "The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so." *Id.* "And all of the evidence must be viewed in the light most favorable to his ultimate ruling." *Id.* Finally, "[b]ecause appellant lost in the trial court on his speedy-trial claim, we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports." *Id.*

## C. Discussion

### 1. Length of the Delay

The State concedes that the three-year delay in this case was presumptively unreasonable.

### 2. Reason for the Delay

The State has the burden of justifying the length of delay. *See id.* at 280. At the hearing on appellant's motion to dismiss, the State told the trial court that "at the time of the indictment, [appellant] was actually in federal custody so we couldn't actually try him at that point anyway because he was in federal custody." On appeal, the State relates the following:

> In the present case, the court's docket reflects that the indictment was returned on July 16, 2009 and the State filed its announcement of ready on the same day. A warrant was issued and bond set at $10,000 on July 20, 2009. Appellant made an initial appearance on July 31, 2009.

Although the clerk's record indicates that appellant made an "initial appearance" on July 31, 2009, it is unclear whether appellant appeared in person or through counsel. The record shows that, on November 3, 2009, the sheriff's office placed a detainer on appellant, who was then in custody in federal prison in Seagoville, Texas. The next document in the clerk's record indicates that appellant filed his pro se IADA request on June 24, 2011, more than a year and a half later. On June 28, 2012, appellant made another "initial appearance" and was appointed counsel. On July 19, 2012, appellant filed his motion to dismiss under the IADA. The motion was heard on August 23, 2012, and on September 14, 2012, appellant pled guilty to the charge as part of a plea-bargain agreement.

10

The State argues that because appellant was in federal custody, "the delay, if attributable at all to the State, should not weigh heavily against it." For his part, appellant argues that the excuse is insufficient because the State failed to offer proof that it exercised due diligence to secure appellant's presence for trial. Appellant also points out that the State knew appellant was in federal custody at least as early as November 2009, when the sheriff's department issued the detainer.

No evidence was presented as to why there was no activity during this three-year period, which is notable, particularly in light of the fact that, at all relevant times, the State knew that appellant was in federal custody. Even the State concedes that "there is no explanation for the delay." "The primary burden of insuring that cases are brought to trial [in a timely manner] rests on the courts and prosecution." *Murphy v. State*, 280 S.W.3d 445, 453 (Tex. App.—Fort Worth 2009, pet. ref'd). With this burden in mind, the trial court could have only reasonably concluded negligence on the part of the State to prosecute the case. *See id.* This period of time must be counted against the State. *See id.* But because there was no evidence that the State was engaging in purposeful dilatory tactics, it does not count heavily against the State. *Id.* In sum, the State did not justify the lengthy delay in this case. *See id.* Consequently, this factor tilts in favor of appellant's claim that he was denied a speedy trial.

### 3. Assertion of the Right to a Speedy Trial

With respect to the third factor, counsel for appellant argued that State's Exhibit 1 shows that appellant consistently asserted his right to a speedy trial. However, the State points out that Defense Exhibit 1 establishes that appellant made his initial IADA request on June 14, 2011. Thus, according to the State, appellant did not signal any

desire for trial until nearly two years after he had been indicted. Thereafter, appellant sought dismissal, not a speedy trial. *See id.* at 454 ("Filing for a dismissal instead of a speedy trial generally weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy one."). Because appellant did not assert his right to a speedy trial for a lengthy period of time, and then after he did assert the right, he filed a motion to dismiss the charge against him, we conclude that this factor weighs against appellant and against his claim that he was denied his right to a speedy trial. *See id.*

### 4. Prejudice

Finally, in support of the fourth factor, counsel for appellant offered the following argument to the trial court:

> And he's been extremely prejudiced by this delay because the underlying case, I think we would say, was a business being run by the defendant. The prosecution would probably say it was a scam. But regardless, there's [sic] employees involved, there's payroll involved, there's [sic] records, people and witnesses that are going to be really hard to track down eight years later.

On appeal, the State argues that appellant presented no evidence of prejudice. We agree. "[S]tatements [by counsel] made during argument are not evidence, and neither the factfinder nor this Court may consider them as such." *Mitchell v. State*, No. 01-94-01041-CR, 1996 Tex. App. LEXIS 3394, at *5 (Tex. App.—Houston [1st Dist.] July 11, 1996, no pet.) (not designated for publication). Accordingly, the fourth factor weighs against appellant's claim.

### 5. Balancing the Factors

As set forth above, the first two factors weigh in favor of appellant's claim, while the second two factors weigh against it. The delay of more than three years was presumptively unreasonable and weighs strongly against the State. Furthermore, the

12

State offered "no explanation for the delay." However, there was no evidence of bad faith or that the State engaged in purposeful dilatory tactics. The record supports only a finding of negligence on the part of the State. Thus, the second factor weighs only slightly against the State. The fact that appellant did not signal any desire for trial until nearly two years after his indictment undermines his claim and establishes a lack of diligence. Therefore, the third factor weighs strongly against appellant's claim. Finally, the complete absence of evidence on the prejudice factor also weighs strongly against appellant. In sum, balancing the factors, we conclude that the trial court did not abuse its discretion in denying appellant's speedy-trial claim.

Appellant's second issue is overruled.

## IV. Conclusion

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
8th day of August, 2013.