

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00252-CR
## NO. 02-14-00253-CR

VIKRAM S. CHAUHAN                                          APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NOS. 1248464D, 1248466D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Vikram S. Chauhan was convicted by a jury of two counts of aggravated robbery. Appellant argues that the trial court erroneously allowed Appellant to be tried in violation of the Interstate Agreement on Detainers Act (IADA). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

On September 8, 2011, Appellant was indicted on two counts of aggravated robbery with a deadly weapon committed on July 7, 2011. On November 14, 2011, while out on bond, Appellant robbed a bank. He was convicted of the bank robbery in federal district court and sentenced to sixty-six months' confinement in federal prison.

On February 7, 2013, Appellant received notice that Tarrant County had lodged a detainer on him for the two aggravated robbery charges. Between July 1, 2013, and December 27, 2013, Appellant filed five pro se motions seeking dismissal of the charges. The State claimed that all five motions were defective and inadequate to invoke the IADA. On March 20, 2014, Appellant was transferred from federal prison to the Tarrant County jail.

A jury trial was held on Appellant's aggravated robbery cases in June 2014. The jury found Appellant guilty of both counts and assessed punishment at twenty years' confinement on each count. The trial court sentenced Appellant accordingly and ordered the sentences to run concurrently. Appellant filed a motion for new trial arguing that he was tried in violation of the IADA. The trial court denied the motion, and this appeal followed.

## The IADA

The IADA is a congressionally-sanctioned compact between the federal government and the states. *See Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S. Ct. 2079, 2082 (2001) (citing 18 U.S.C. app. § 2). It creates uniform and

2

cooperative procedures to be used for lodging and executing a detainer when one state seeks to obtain temporary custody of and prosecute a prisoner in another state or federal facility. *Id.* Texas adopted the IADA in code of criminal procedure article 51.14. *See* Tex. Code Crim. Proc. Ann. art. 51.14 (West 2006); *State v. Votta*, 299 S.W.3d 130, 134–35 (Tex. Crim. App. 2009).

When an IADA-party state has an untried indictment, information, or complaint against the prisoner, it files a detainer with the institution in the state that is holding the prisoner. *Votta*, 299 S.W.3d at 135. The prison is required to promptly inform the prisoner that a detainer has been filed against him and that he has the right to request final disposition of the charges. Tex. Code Crim. Proc. Ann. art. 51.14 art. III(c); *Votta*, 299 S.W.3d at 135. The prisoner, in order to invoke the IADA, "shall have cause[] to be delivered to the prosecuting officer and the appropriate court of the prosecuting office's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." Tex. Code Crim. Proc. art. 51.14, art. III(a). The prisoner's written request must also be accompanied by

> a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner.

*Id.*

3

"The prisoner bears the burden of demonstrating compliance with the procedural requirements of article III." *Walker v. State*, 201 S.W.3d 841, 846 (Tex. App.—Waco 2006, pet. ref'd) (citations omitted). Once the prisoner meets the requirements under Article III(a), then the prisoner must be brought to trial in the receiving state within 180 days from the date on which the prosecuting officer and the appropriate court receives the written request for a final disposition, unless a continuance is granted under the IADA. *Id.*; *Votta*, 299 S.W.3d at 135. If the prisoner is not brought to trial within 180 days, the trial court must dismiss the indictment with prejudice. Tex. Code Crim. Proc. Ann. art. 51.14, art. III(d); *Votta*, 299 S.W.3d at 135.

## Appellant's motions

In Appellant's first point, he argues that he was tried in violation of article III of the IADA. As discussed above, Appellant must properly request a final and speedy disposition under the IADA for the act's requirements to apply. We must therefore determine whether Appellant's motions meet the statutory requirements necessary to invoke the IADA.

Under the IADA, Appellant is first required to request a final disposition of his indictments before he requests dismissal of the indictments. Tex. Code Crim. Proc. art. 51.14, art. III(a). Appellant's third motion is the only motion that uses

4

the term "final disposition."[2]  But Appellant's third motion, despite the title including a "request for disposition of indictments," does not actually request a final disposition of the indictments.  The motion states, "[Appellant] is now imprisoned in the Federal Correctional Institution . . . , and pursuant to the detainer lodged against [him] . . . . , that a request for final disposition *shall be made* to the above referenced . . . causes against [him]."  [Emphasis added.] Appellant goes on to claim that the 180-day period in which the State was required to bring him to trial had already passed, that he had filed a "Motion to Dismiss for violations of the Speedy Trial Act,"  and that "[w]hen the Petitioner's right to a speedy trial has been violated, dismissal is 'the only possible remedy.'" [Citations omitted.]  The prayer of Appellant's third motion likewise only requested the dismissal of his indictments.  Appellant's third motion therefore did not request a "final disposition" of the indictments as required by the IADA, but a dismissal based on the State's alleged failure to comply with the IADA deadline. *See Votta*, 299 S.W.3d at 137 ("Appellee's motion to dismiss the charges was not proper notice to the district court of his request for disposition.").  Absent a proper request for a final disposition, the IADA time period had not begun to run, and dismissal was not mandated.  *See id.*

---

[2]Both parties agreed during oral argument that Appellant's third motion was the most relevant in determining whether Appellant's filings were statutorily adequate to invoke the IADA.

Furthermore, none of Appellant's filings were accompanied by the statutorily required certification from the prison warden of the prison in which he was serving his federal sentence. A request for dismissal of the indictments must include the required documentation to sufficiently invoke the IADA. *See State v. Chesnut*, 424 S.W.3d 213, 218 (Tex. App.—Texarkana 2014, no pet.) (holding that a prisoner complies with his obligations under the IADA when he mails a "proper request for final disposition *along with all the required documentation*") (emphasis added); *Lara v. State*, 909 S.W.2d 615, 617–18 (Tex. App.—Fort Worth 1995, pet ref'd) (holding that appellant's proper request for disposition alone, unaccompanied by a certificate from the official having custody of him, was insufficient to invoke the IADA). Even viewing all five of Appellant's pro se filings together, the motions are still inadequate to invoke the IADA. Because Appellant's motions did not invoke the IADA, the 180-day period did not start, and Appellant was not tried in violation of the IADA. We overrule Appellant's first point.

## Ineffective assistance of counsel

In his second point, Appellant argues that his trial counsel rendered ineffective assistance by not moving to dismiss the underlying charges for the alleged violation of the IADA. Appellant's second point of error is based solely on the first point of error, and he acknowledged in oral argument that if the first point of error is overruled, then no grounds exist to support the second point of error.

6

Because we have overruled Appellant's first point, we overrule Appellant's second point.

## Conclusion

Having overruled Appellant's points, we affirm the trial court's judgments.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 29, 2015