

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-263-CR**
**NO. 2-07-264-CR**

MARSHALL ADAMS, JR.                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### Introduction

Appellant Marshall Adams, Jr. appeals his convictions for theft of a vehicle and evading arrest or detention using a vehicle. In his sole point, appellant contends that the trial court erred by denying his motion to suppress the evidence obtained using a "bait" vehicle. We affirm.

**Background Facts**

The Fort Worth Police Department's Covert Organized Bait Recovery and Apprehension (COBRA) program deploys "bait" vehicles in areas of the City with a high rate of auto thefts. According to the testimony of Fort Worth Detective Ward Robinson, who was a part of the auto theft unit for six years, a bait car is any vehicle equipped by the City to catch persons who have a tendency to commit car thefts. The COBRA vehicles are equipped with a computer monitoring system that remotely controls a GPS system, door locks, and an engine kill switch that turns the vehicle off. In addition, the vehicle has monitoring equipment that covertly alerts police whenever the car has been opened, entered, or moved in any way. After the computer system is activated by a person who opens and enters the vehicle, on-board recording devices are activated to visually and audibly record what takes place in the vehicle.

On June 30, 2006, police used a 1999 Ford Expedition sport utility vehicle (SUV) as a bait car and placed it on Crenshaw Street in the Poly Tech area of Fort Worth. The police left the SUV with the doors unlocked, the windows down, and the keys sitting in plain sight on the console. In the early morning of June 30, police received a report that the system in that car had detected that the door had been opened and that there was movement within the vehicle. After being alerted by dispatch that the SUV was now mobile,

2

police moved into a position to intercept it. Once police spotted the described vehicle and matched the license plate, they pulled out behind it and activated their overhead lights. The driver of the SUV responded to the police action by speeding off and leading the police on a multi-block chase that culminated in the SUV crashing into a parked vehicle. Once the SUV came to a stop, appellant, who had been driving, fled the vehicle on foot, but police eventually apprehended him.

A trial court subsequently found appellant guilty of theft of a vehicle and evading arrest or detention using a vehicle and assessed punishment at fifteen years' confinement. Appellant timely filed this appeal.

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853,

3

855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact

findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*.; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**Analysis**

Appellant contends that the trial court abused its discretion by denying his motion to suppress evidence obtained using the bait car because the use of bait cars violates article 2.13 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 2.13 (Vernon 2005). Specifically, appellant

5

argues that by leaving the SUV's doors unlocked, the windows rolled down, and the keys on the console, the police facilitated the theft of the bait car in violation of their duty to prevent or suppress crime and in violation of public policy. *See id.*

This case appears to be an issue of first impression. When discerning the meaning of a statute, we begin with its plain language. *Getts v. State,* 155 S.W.3d 153, 155 (Tex. Crim. App. 2005); *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We focus our attention on the literal text of the statute in question. *Getts,* 155 S.W.3d at 155; *Boykin,* 818 S.W.2d at 785. If that language is clear and unambiguous, the plain meaning of those words is applied. *Getts,* 155 S.W.3d at 155; *Boykin,* 818 S.W.2d at 785; *State v. Verhoeven,* 151 S.W.3d 637, 639 (Tex. App.—Fort Worth 2004, pet. ref'd). But if the plain language leads to an absurd result that the legislature could not have possibly intended, or if the language is ambiguous, we may consider extra-textual factors to determine the statute's meaning. *Getts,* 155 S.W.3d at 155; *Boykin,* 818 S.W.2d at 785; *Verhoeven,* 151 S.W.3d at 639. For example, if a statute may be interpreted reasonably in two different ways, a court may consider the consequences of differing interpretations in deciding which interpretation to adopt. *Verhoeven,* 151 S.W.3d at 639. If one interpretation

6

yields absurd results while the other interpretation yields no such absurdities, the latter interpretation is preferred. *Id.*

The Texas Code of Criminal Procedure article 2.13 provides

> (a) It is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means.
>
> (b) The officer shall:
>
> (1) In every case authorized by the provisions of this code, interfere without warrant to prevent or suppress crime.

TEX. CODE CRIM. PROC. ANN. art. 2.13.

Generally, the legislature determines public policy. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) (holding power to make rules and determine public policy is legislative); *Westchester Fire Ins. Co. v. Admiral Ins. Co.,* 152 S.W.3d 172, 182 (Tex. App.—Fort Worth 2004, pet. denied). Courts look to state statutes and judicial decisions to determine public policy. *Westchester*, 152 S.W.3d at 182. Additionally, our supreme court is highly deferential to the legislature when determining this state's public policy, stating that

> [p]ublic policy . . . is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.

7

*Tex. Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 250 (Tex. 2002); *Westchester,* 152 S.W.3d at 182.

Appellant alleges that a bait car program violates law enforcement's duty to preserve peace and prevent and suppress crime. Appellant attempts to distinguish his case from *Phillips v. State,* which, although involving a different statute, is similar in that it involves a situation in which police provided an opportunity to commit a crime. 161 S.W.3d 511, 511 (Tex. Crim. App. 2005). In that case, the court of criminal appeals held that a minor informant recruited by a Texas Alcoholic Beverage Commission (TABC) agent to enforce the alcoholic beverage code through conducting a sting operation inside a bar was not a criminal trespasser. *Id.* The Texas Alcoholic Beverage Code expressly provides that minors cannot be held criminally liable for possession or purchase of alcohol if they are assisting TABC officers. *See* TEX. ALCO. BEV. CODE ANN. § 101.04 (Vernon Supp. 2008); *Phillips,* 161 S.W.3d at 514. The court stated that it would be absurd for the legislature to pass such legislation if it did not also intend for the minors to have access to the targets of the sting operations without being held criminally liable for trespass. *Id.* Additionally, the court noted that a "no trespassing by persons under 21" sign could not be applicable to confidential informants because it would destroy the State's ability to create the opportunity required to effectuate an undercover sting. *Id.* at 514–15.

8

Such an interpretation would render many of the alcoholic beverage code provisions regarding the sale of alcohol to minors practically unenforceable. *Id.* at 515. Further, the court also held that no laws were violated by police officers in such a situation. *Id.*

Whether using a bait car or a minor informant, the police are providing an opportunity for criminals to act illegally in an effort to enforce a particular law. Just as preventing a peace officer's ability to create an opportunity for alcohol to be sold to minors does not conflict with legislative intent to enforce the Texas Alcoholic Beverage Code, preventing police from using bait cars to create an opportunity for thieves to steal vehicles does not conflict with code of criminal procedure article 2.13. *See id.* Bait car programs do not conflict with article 2.13 because the use of bait cars allows police to catch criminals that have already decided to steal vehicles, regardless of whether the vehicle is a bait car.

Here, construing the plain language of the statute to allow the use of a bait car program does not lead to absurd results unintended by the legislature because, by utilizing the bait car program in areas with a high rate of auto thefts, the police fulfill their duty to suppress crime by apprehending those already inclined to steal cars, thus providing a deterrence to auto theft.

9

Appellant also argues that the police's action in baiting people to steal vehicles violates public policy as a matter of law. Although the legislature has not expressly authorized bait car programs, neither has it prohibited such programs. We have already determined that the bait car program does not conflict with article 2.13 of the code of criminal procedure; likewise, public policy concerns of preventing auto thefts outweigh any competing concern about the participation of police in such programs.

Moreover, although appellant specifically denied that he was making an entrapment argument at trial, appellant's argument that the police violated their duty by facilitating the crime appears to be such a defense. *See* TEX. PENAL CODE ANN. § 8.06 (Vernon 2003). However, an entrapment defense does not apply when police merely afford a person the opportunity to commit a crime. *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994); *Barnes v. State*, 70 S.W.3d 294, 304 (Tex. App.—Fort Worth, 2002, pet. ref'd). When the criminal intent originates in the mind of the accused, the fact that police provided the opportunity for the crime to be committed is not a defense to prosecution. *Barnes,* 70 S.W.3d at 304. Thus, the Fort Worth bait car program does not constitute entrapment because the police did not induce appellant into driving a car that he was not entitled to operate. This court has so held in the past. *See Keeton v. State,* No. 02-07-00243-CR, 2008 WL

10

755294, at *3 (Tex. App.—Fort Worth Mar. 20, 2008, no pet.) (mem. op., not designated for publication) (holding that a Fort Worth bait car merely afforded appellant the opportunity to steal a truck and officers did not, in any way, entrap him).

Because we hold that a bait car program does not violate law enforcement's duty to prevent and suppress crime under article 2.13, nor does it violate the public policy of the State of Texas, we further hold that the trial court did not abuse its discretion by denying appellant's motion to suppress the evidence. We overrule his sole point.

### Conclusion

Having overruled appellant's sole point, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, HOLMAN, and GARDNER, JJ.

PUBLISH

DELIVERED: August 29, 2008

11