# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH
### NO. 02-10-00420-CV


IN RE BILLY EARL DACUS                                    RELATOR

----------

## ORIGINAL PROCEEDING

----------

## OPINION

----------

Relator Billy Earl Dacus seeks writs of mandamus and prohibition directing the Honorable Carmen Rivera-Worley of the 16th Judicial District Court of Denton County, Texas, to dismiss with prejudice the State's 2008 indictment charging him with murder. The State is the real party in interest. Relator asserts that the prohibition against double jeopardy and the Interstate Agreement on Detainers Act (IADA) precludes the State from pursuing this murder charge. The

State filed a response in opposition. Based on the filings before us,[1] we conditionally grant Relator mandamus and prohibition relief under the IADA because he has established that (1) he has no other adequate legal remedy and that (2) he has a "clear right to the relief sought."[2] *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 907 (Tex. Crim. App. 2011).

## I. Background

The IADA is a congressionally-sanctioned compact between the federal government and the states. *See Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S. Ct. 2079, 2082 (2001) (citing 18 U.S.C. App. 2 § 2). It creates uniform and cooperative procedures to be used for lodging and executing a detainer when one state seeks to obtain temporary custody of, and prosecute, a prisoner in another state or in a federal facility. *Id.* Texas has adopted the IADA in article 51.14 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 51.14 (Vernon 2006); *State v. Votta*, 299 S.W.3d 130, 134–35 (Tex. Crim. App. 2009). As relevant here, a state that obtains a prisoner under the IADA "shall" commence trial within 120 days of his arrival unless the trial date is extended for

---

[1]This court has received (1) Relator's Petition for Writs of Prohibition and Mandamus and attached Appendix; (2) the State's Response and attached Appendix; (3) Relator's Response; and (4) the Reporter's Record and exhibits from the March 18, 2010 and June 10, 2010 hearings.

[2]Because we conditionally grant Relator relief on the IADA issue, we do not address his double jeopardy claim.

2

good cause. Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c). If the State "return[s]" the prisoner to his "original place of imprisonment" before holding trial on the indictment that formed the basis of the detainer, that indictment "shall" be dismissed with prejudice. *Id.* art. 51.14, Art. IV(e).

In the instant case, the State indicted Relator on unrelated theft and capital murder charges in 1983. Because Relator was serving time in federal prison (in Kansas) at that time, the State lodged an IADA detainer against him on both the theft and capital murder charges and secured his temporary custody on December 1, 1983. Four days later, Relator pleaded guilty to the theft charge and received a thirty-year sentence to run concurrently with his forty-five-year federal sentence. Several days later, the State dismissed the capital murder charge and returned Relator to federal custody. Twenty-five years later, the State charged Relator with murder based on the same criminal transaction as the 1983 capital murder charge.

In March and June 2010, Respondent conducted hearings on Relator's motion to quash the 2008 indictment. In denying Relator's requested relief, Respondent entered findings of fact and conclusions of law. In briefing to this court, Relator and the State agree that certain, undisputed facts can be derived from Respondent's October 27, 2010 order:

- On January 9, 1983, the State (through the Denton County District Attorney's Office) charged Relator with the unrelated offenses of theft and capital murder.

3

- At the time of the 1983 indictment, Relator was in federal custody on an unrelated bank robbery charge. The State lodged a detainer against Relator under the IADA and obtained his temporary custody on December 1, 1983, to face the theft and capital murder charges.

- On December 5, 1983, Relator pleaded guilty to the State's theft charge and received a thirty-year prison sentence, to run concurrently with his forty-five-year federal sentence.

- On December 12, 1983, the State dismissed the capital murder charge and subsequently returned Relator to federal custody. The State's Motion to Dismiss does not specify whether the case was dismissed with or without prejudice. The ground listed for dismissal was that the defendant "was convicted in another case."

- On November 13, 2008, the State indicted Relator for murder (based on the same criminal transaction that had earlier formed the basis of the 1983 capital murder charge).[3]

- On April 2, 2009, the State arrested Relator, who had been released from federal custody.

Respondent concluded (1) that the IADA provides no legal basis to bar the State from prosecuting Relator on the current murder charge and (2) that the State's indictment does not violate any of the IADA provisions because "the Court has no case law supporting the Defendant's interpretation of the IAD[A] and the Court finds that the State's actions do not warrant any interpretive expansion of the IAD[A]."

## II. Standard of Review

Relator asks for both mandamus and prohibition relief. The "essential difference" between a writ of prohibition and a writ of mandamus is that

---

[3]The State explains that it reindicted the case because 2008 DNA testing linked Relator to the murder.

4

the former issues to prevent the commission of a future act whereas the latter operates to undo or nullify an act already performed; the former will not be granted when the act sought to be prevented is already done, but will lie when such an act is not a full, complete and accomplished judicial act.

*Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985). We address both types of relief as Relator seeks to have us (1) vacate Respondent's order denying Relator's motion to quash the 2008 indictment and (2) order Respondent to dismiss the 2008 indictment (to prevent prosecution of the 2008 murder charge against him).

The traditional test for determining whether mandamus or prohibition relief is appropriate requires Relator to establish (1) that he has no other adequate legal remedy to redress his alleged harm and (2) that what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision.[4] *Levario*, 306 S.W.3d at 320. The court of criminal appeals has held that the "ministerial act" requirement "is satisfied if the relator can show he has 'a *clear* right to relief sought'—that is to say, 'when the facts and circumstances dictate but one rational decision' under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Id.* at 320 n.6 (quoting *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007)); *see Lykos*, 330 S.W.3d at 907.

---

[4]The standards for mandamus and prohibition relief are essentially the same. *Simon v. Levario*, 306 S.W.3d 318, 320 n.3 (Tex. Crim. App. 2009) (citing *Wade*, 689 S.W.2d at 897).

5

### III. Interstate Agreement on Detainers Act

Article I of the IADA sets forth the reasons for the IADA's creation, including that

> charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.

Tex. Code Crim. Proc. Ann. art. 51.14, Art. I. This article adds that "it is the . . . purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments." *Id.* Article IX provides that the IADA "shall be liberally construed so as to effectuate its purposes." *Id.* art. 51.14, Art. IX.

The IADA's central provisions are Articles III and IV. Under Article III, a prisoner (against whom a detainer has been filed) can command a speedy disposition of the charges giving rise to the detainer. *Id.* art. 51.14, Art. III; *United States v. Mauro*, 436 U.S. 340, 351, 98 S. Ct. 1834, 1842 (1978). Under Article IV, which applies in the instant case, a prosecutor (who has lodged a detainer against a prisoner in another state) can secure the prisoner's presence for disposition of the outstanding charge. Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV; *Mauro*, 436 U.S. at 351, 98 S. Ct. at 1843.

Article IV(c) specifies that the receiving State shall begin the prisoner's "trial . . . within one hundred and twenty days of the arrival of the prisoner in the

6

receiving State." Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c). Article IV(e) prohibits return of the individual to the sending State before that trial is complete:

> If a trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Paragraph (e) of Article V hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

*Id.* art. 51.14, Art. IV(e).

> Article V(c) provides:

> [I]n the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

*Id.* art. 51.14, Art. V(c).

### IV. Parties' Contentions

Relator asserts that the literal language of the IADA bars any further criminal proceedings when a defendant is returned to the original place of imprisonment before being brought to trial on the indictment (the basis of which the detainer has been lodged). Relator asserts therefore that, under the "unforgiving and commanding language of [the] IADA and court interpretations," Respondent has the ministerial duty to dismiss the 2008 murder indictment. Further, Relator asserts that he has no right of appeal from Respondent's actions and that no other adequate remedy at law is available.

7

The State argues that the IADA provisions are inapplicable in this case. Specifically, the State asserts that it "expeditiously disposed of" the capital murder indictment eleven days after Relator arrived in Texas, and therefore, an "untried indictment" no longer existed against Relator when the State sent him back to Kansas—a condition precedent to application of the IADA.[5] The State asserts that this is a question of first impression in Texas and federal jurisprudence because the IADA does not directly address the instant issue and because there is no controlling authority on point. Therefore, Respondent's decision—to deny Relator's motion to quash the indictment—was discretionary. Citing *Smith v. Gohmert*, the State further asserts that Relator has an adequate remedy by direct appeal if he is ultimately convicted of murder. 962 S.W.2d 590, 593 (Tex. Crim. App. 1998) (holding that a defendant's right to appeal from conviction was an adequate remedy at law for a violation of the constitutional right to speedy trial).[6]

---

[5]The State emphasizes that it dismissed Relator's capital murder indictment in 1983 in good faith (based on a perceived inability to prove the facts of the case) and that it did not attempt to circumvent the dictates of the IADA.

[6]While the State notes that the court of criminal appeals and this court have addressed IADA claims on direct appeal, these cases do not address whether the claims could have been raised in a petition for writ of mandamus. *See, e.g.*, *Lara v. State*, 909 S.W.2d 615, 616 (Tex. App.—Fort Worth 1995, pet. ref'd); *McDonald v. State*, 846 S.W.2d 954, 955 (Tex. App.—Fort Worth 1993, pet. ref'd). The State also cites *Giles v. State*, 921 S.W.2d 235 (Tex. Crim. App. 1996), which is a dissenting opinion to the court of criminal appeals' refusal to grant Giles's petition for discretionary review.

8

## V. Analysis

### A. The Statutory Language

When construing a statute, reviewing courts seek to effectuate the legislature's intent in enacting it. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *Adams v. State*, 270 S.W.3d 657, 660 (Tex. App.—Fort Worth 2008, pet. ref'd). The plain meaning of the words should be applied unless the language is ambiguous or application of the statute's plain language would lead to an absurd result that the legislature could not have intended. *Boykin*, 818 S.W.2d at 785; *Adams*, 270 S.W.3d at 660.

Article 51.14 provides that "[i]f trial is not had" on an indictment "contemplated hereby" prior to returning the prisoner to his original place of imprisonment, the indictment "shall not be of any further force or effect," and "the court shall enter an order dismissing the same with prejudice." Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(e). The statute makes clear that, regarding any indictment that formed the basis of the detainer, (1) the State must proceed to trial within 120 days of the prisoner's arrival (unless extended for good cause), or (2) "the court shall enter an order dismissing the same with prejudice." *Id.* The statute does not contemplate the dismissal of indictments without prejudice.[7]

---

[7]In contrast, in 1988 Congress amended the federal IADA to provide that, when the United States is the receiving state, a case may be dismissed *with or without prejudice* depending on the "seriousness of the offense," the "facts and circumstances of the case," and the "impact of a reprosecution on the administration of the agreement" and "on the administration of justice." *Bozeman*, 533 U.S. at 156, 121 S. Ct. at 2086 (citing 18 U.S.C. App. 2 § 9(1)).

Indeed, the State's proposed interpretation of the statute—i.e., that the State is permitted to exempt itself from the IADA by dismissing (in good faith) an indictment without prejudice before returning the prisoner to the sending state prior to the expiration of the requisite time period—disregards the plain meaning of Articles IV(e) and V(c).  *See* Tex. Gov't Code Ann. § 311.021(2) (Vernon 2005) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective.").  This interpretation also disregards the IADA's stated purpose, which is "to encourage the expeditious and orderly disposition of [outstanding charges against a prisoner]."  Tex. Code Crim. Proc. Ann. art. 51.14, Art. I.

## B.  Case Law Addressing the Statute

Ample authority supports the conclusion that the trial court in 1983 had a mandatory duty to dismiss the capital murder indictment with prejudice because the State failed to proceed to trial against Relator before returning him to federal prison.  For instance, in *Mauro*, the Supreme Court held that "the detainer remains lodged against the prisoner until the underlying charges are *finally* resolved."  436 U.S. at 362, 98 S. Ct. at 1848 (emphasis added); *see Ex parte Torres*, 943 S.W.2d 469, 473 (Tex. Crim. App. 1997) (analyzing the phrase "final disposition" in the context of article 11.07, § 4 of the code of criminal procedure and noting that the IADA "appears to contemplate a 'final disposition' as being either an adjudication on the merits or a dismissal of pending charges with

prejudice"). Dismissing an indictment without prejudice does not finally resolve the charges.[8]

Moreover, the Supreme Court's holding in *Bozeman* is instructive. 533 U.S. at 153, 121 S. Ct. at 2084–85. Bozeman was serving a federal prison sentence in Florida when a district attorney in Alabama sought his temporary custody under Alabama's IADA to arraign him on firearms charges and to appoint counsel. *Id.* at 151, 121 S. Ct. at 2083. Bozeman spent the night in the county jail, appeared in local court with local counsel the next morning, and was returned to federal prison that evening. *Id.*, 121 S. Ct. at 2083–84. When the county brought him back for trial one month later, Bozeman moved to dismiss the state charges because he had been returned to the original place of imprisonment prior to trial being had on state charges in violation of the IADA. *Id.*, 121 S. Ct. at 2084. Bozeman was convicted, and the trial court subsequently denied the dismissal motion. *Id.* at 152, 121 S. Ct. at 2084. An intermediate appellate court affirmed the conviction. *Id.*, 121 S. Ct. at 2084. The Alabama State Supreme Court reversed, holding that the literal language of the IADA controlled and required dismissal of the state charges. *Id.*, 121 S. Ct. 2084. The dissenters argued that the violation was merely "technical" and did not require

---

[8] *See generally United States v. Knight*, 562 F.3d 1314, 1325–26 (11th Cir.), *cert. denied*, 130 S. Ct. 192 (2009) ("Because the dismissal of Knight's first indictment without prejudice did not produce a final resolution of the charges against him, the original detainer against Knight remained in effect: 'The detainer remains lodged against the prisoner until the underlying charges are finally resolved.'").

11

dismissal.  The United States Supreme Court affirmed the Alabama Supreme

Court, holding that

> the language of the Agreement militates against an implicit exception, for it is absolute.  It says that, when a prisoner is "returned" before trial, the indictment, information, or complaint "*shall not* be of any further force or effect, and the court *shall* enter an order dismissing the same with prejudice."  Art. IV(e) (emphasis added).  "The word 'shall' is ordinarily 'the language of command.'" *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (quoting *Escoe v. Zerbst*, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935)).

*Bozeman*, 533 U.S. at 153, 121 S. Ct. at 2084–85.[9]

While the State distinguishes *Bozeman* factually (arguing that Alabama

returned Bozeman to federal prison with an untried indictment still pending), the

State does not address the broader application of the opinion's holding.  In fact,

the State's argument—that the IADA does not apply because the 1983

indictment was dismissed in "good faith" due to an inability to prove its case

rather than to avoid the provisions of the IADA (which it acknowledges would

---

[9]The Supreme Court noted that the IADA is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law and is subject to federal construction.  *Bozeman*, 533 U.S. at 149, 121 S. Ct. at 2082 (citing *New York v. Hill*, 528 U.S. 110, 111, 120 S. Ct. 659, 662 (2000)); *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S. Ct. 703, 708–09 (1981)).  C*f. Ex parte Sanchez*, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996) ("The IAD[A] is a state law as well as a law of the United States.").

12

have been improper)—advocates the type of exception that the *Bozeman* Court prohibits.[10]

The court of criminal appeals's opinion in *State v. Williams* (in which the court holds that the IADA does not violate the Separation of Powers Clause of the Texas constitution) refutes the State's interpretation of the IADA:

> Because the prosecutor has no extraterritorial power, he gains a benefit by using the provisions of the IADA—access to a defendant whom he would otherwise have no power to reach. The Legislature was not obliged to give the prosecutor that benefit. Having done so, we do not believe it unreasonable for the Legislature to impose some conditions. Moreover, the prosecutor who makes a request under the IADA knows or should know, when he makes that request, that he will have a time limit in which to try the prisoner. If the prosecutor needs time to investigate, he can simply refrain from filing a request until he has gathered enough information to proceed quickly to trial. Further, if unexpected events prevent trying the case within the 120 day time limit, the trial court may grant a continuance upon a showing of good cause in open court with the prisoner or his counsel present.

938 S.W.2d 456, 462 (Tex. Crim. App. 1997).

Further, in *Engle v. Coker*, the Tenth Court of Appeals held that the purposes of the IADA are such that, while a receiving state may reindict, it must adhere to the original time period. 820 S.W.2d 247, 251 (Tex. App.—Beaumont 1991, orig. proceeding) (citing *Bokemeyer v. State*, 624 S.W.2d 909, 912 (Tex. Crim. App. 1981)). The court explained:

---

[10]In *Bozeman*, the State of Alabama admitted violating the IADA under a literal interpretation of the statute, while here, the State argues that it did not violate the IADA.

13

> The new indictment does not start the clock ticking anew, because the temporary custody is based upon the original indictment. Any other interpretation of the rule would nullify the time limitations, because once the receiving state has obtained custody, it would then be able to permanently hold the defendant in temporary custody by simply reindicting him every 180 days [under article III].

*Id.*

In its filing with this court, the State discusses "two noncontrolling cases from other states that manifested similar, but distinguishable, circumstances." *See Marshall v. Superior Court*, 228 Cal. Rptr. 364, 367–68 (Cal. App. 4th Dist. 1986); *People v. Christensen*, 465 N.E.2d 93, 97 (Ill. 1984).[11] Relator responds that these cases illustrate "how other jurisdictions have given relief to defendants in similar situations." We find *Marshall* to be instructive (while noting that its focus is on IADA's Article III).[12] Specifically, Marshall was charged around the same time with separate murders in California and Texas and convicted and sent to prison in Texas on an unrelated felony. *Marshall*, 228 Cal. Rptr. at 365.

---

[11]The State asserts that, in both *Marshall* and *Christensen*, the prosecutors "essentially dismissed the relevant indictment to circumvent the IADA, knowing the case would be reindicted," while here, there is no suggestion that the State ever intended to reindict the dismissed capital murder indictment. We do not find this distinction material to our analysis, and we note that the *Marshall* court did not attribute bad faith motives to the prosecutors. *Marshall,* 228 Cal. Rptr. at 368.

[12]While Article III (through which the prisoner initiates the proceedings) and Article IV (through which the State initiates the proceedings) address different circumstances, Article V(c) provides that, if an indictment (that formed the basis of the detainer) is not brought to trial "within the period provided in Article III or Article IV," the court shall enter an order dismissing the indictment with prejudice. Tex. Code Crim. Proc. Ann. art. 51.14, Arts. III, IV, V(c).

Marshall then entered into an agreement with the prosecutors in Texas and California to plead guilty to both pending murder charges and serve his time in California. *Id.* He then demanded speedy disposition of the California charge under Article III of California's IADA. *Id.* at 366. Once in California, Marshall refused to plead guilty to murder, after which the People dismissed the case. *Id.* Marshall was returned to Texas to stand trial on his other murder charge, although ultimately that charge was dismissed. *Id.* Ten months later, Marshall was returned to California and arraigned in a new complaint that charged the previously alleged murder. *Id.* Marshall moved to dismiss the new complaint under the IADA, asserting that the first complaint had to have been dismissed with prejudice. *Id.* When the trial court refused, Marshall sought a writ of prohibition in the intermediate appellate court to prevent further prosecution of the charges under the IADA. *Id.* The appellate court granted relief, holding that dismissal was mandatory under such circumstances because "[b]y the unambiguous language of [Article III of the IADA]," Marshall was "entitled to be brought to trial within 180 days of his demand, and also to have the proceedings resolved in one uninterrupted episode." *Id.* at 367–68.

## C. Ministerial Duty Under the Statute and Case Law

The parties do not dispute the relevant facts in this case as they pertain to the IADA, and these facts are supported by documentary evidence. *See, e.g.*, *Votta*, 299 S.W.3d at 135 (holding that in some instances, a court may determine whether the requirements of the IADA were met by examining relevant

15

paperwork).  Further, the statute and the existing case law establish (such that the issue cannot be considered debatable) that, in 1983, the trial court had a mandatory duty to dismiss with prejudice the capital murder indictment pending against Relator.  For this reason, Respondent has a ministerial duty to dismiss the 2008 murder indictment.  *See Levario*, 306 S.W.3d at 320 n.6 (quoting *Young*, 236 S.W.3d at 210).  To the extent this matter can be considered one of first impression, it can nonetheless be the subject of mandamus relief because it is not an unsettled or uncertain question of law.  *See State ex. rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003) (holding that a matter is not necessarily one involving judicial discretion simply because it involves an issue of first impression); *State ex rel. Hill v. Court of Appeals*, 34 S.W.3d 924, 928 (Tex. Crim. App. 2001) (reaffirming that an unsettled question of law bars writ relief).

**D. No other adequate legal remedy**

The court of criminal appeals has indicated (albeit in dicta) that mandamus may be a proper remedy under circumstances similar to the instant case.  *See Ex parte Doster*, 303 S.W.3d 720, 727 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 3397 (2010).  In *Ex parte Doster*, the court held that a defendant's pretrial habeas corpus application, followed by an interlocutory appeal, is not the appropriate vehicle for raising a claim that an indictment should be dismissed due to the State's failure to comply with the IADA.  *Id.* at 721.  The court noted:

> Of course, if it is indeed clear that the IAD[A] has been violated, a pretrial disposition of the claim would most satisfy the underlying purposes of the IAD[A]. . . . If the trial court rules against

16

the defendant and the defendant's entitlement to relief is indisputable, as a matter of fact and law, then mandamus might be an appropriate remedy.

*Id.* at 727.

At least two appellate courts have conditionally granted mandamus relief and compelled a trial court to dismiss an indictment with prejudice based on an IADA violation. *See Engle v. Coker*, 820 S.W.2d at 250–51; *In re Ryan*, No. 10-04-00128-CR, 2004 WL 2365239, at *1 (Tex. App.—Waco 2004, orig. proceeding) (mem. op., not designated for publication). In *Engle v. Coker*, the Beaumont Court of Appeals explained: "A remedy at law may exist, yet be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate." 820 S.W.2d at 251 (citing *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1987)). The court held that where the State failed to try the relator within the IADA's statutorily defined time frame, "a trial would be a useless act" and that "direct appeal is not an adequate remedy." *Id.* Similarly here, although Relator could challenge an eventual conviction on direct appeal, our analysis demonstrates that Relator has established a clear right to relief and that, therefore, a trial would be a "useless act." *Id.* Thus, petitions for a writ of mandamus and prohibition are appropriate vehicles for Relator to challenge Respondent's order denying Relator's request to dismiss the 2008 murder indictment and to request that the State be precluded from prosecuting him on the pending 2008 murder indictment.

17

## VI. Conclusion

We conditionally grant mandamus and prohibition relief. We lift our January 25, 2011 Order staying the trial proceedings in cause number F-2008-2397-EA and order Respondent to vacate the October 27, 2010 Order denying Relator's motion to quash the 2008 murder indictment. If Relator's motion to quash is not granted and the 2008 indictment is not dismissed with prejudice within a reasonable time, the writs shall issue.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DELIVERED: April 4, 2011

18