02-10-420-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00420-CV

 

 


 
 
 In re Billy Earl Dacus
 
 
  
 
 
 RELATOR
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

 

ORIGINAL PROCEEDING

----------

 

OPINION

----------

 

          Relator
Billy Earl Dacus seeks writs of mandamus and prohibition directing the
Honorable Carmen Rivera-Worley of the 16th Judicial District Court of Denton
County, Texas, to dismiss with prejudice the State’s 2008 indictment charging
him with murder.  The State is the real party in interest.  Relator asserts that
the prohibition against double jeopardy and the Interstate Agreement on
Detainers Act (IADA) precludes the State from pursuing this murder charge.  The
State filed a response in opposition.  Based on the filings before us,[1]
we conditionally grant Relator mandamus and prohibition relief under the IADA
because he has established that (1) he has no other adequate legal remedy and that
(2) he has a “clear right to the relief sought.”[2]  See State ex
rel. Lykos v. Fine, 330 S.W.3d 904, 907 (Tex. Crim. App. 2011).

I.
Background

The
IADA is a congressionally-sanctioned compact between the federal government and
the states.  See Alabama v. Bozeman, 533 U.S. 146, 148, 121 S. Ct. 2079,
2082 (2001) (citing 18 U.S.C. App. 2 § 2).  It creates uniform and cooperative
procedures to be used for lodging and executing a detainer when one state seeks
to obtain temporary custody of, and prosecute, a prisoner in another state or
in a federal facility.  Id.  Texas has adopted the IADA in article 51.14
of the code of criminal procedure.  See Tex. Code Crim. Proc. Ann. art.
51.14 (Vernon 2006); State v. Votta, 299 S.W.3d 130, 134–35 (Tex. Crim.
App. 2009).  As relevant here, a state that obtains a prisoner under the IADA
“shall” commence trial within 120 days of his arrival unless the trial date is
extended for good cause.  Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c).  If
the State “return[s]” the prisoner to his “original place of imprisonment”
before holding trial on the indictment that formed the basis of the detainer,
that indictment “shall” be dismissed with prejudice.  Id. art. 51.14, Art.
IV(e).

In
the instant case, the State indicted Relator on unrelated theft and capital
murder charges in 1983.  Because Relator was serving time in federal prison (in
Kansas) at that time, the State lodged an IADA detainer against him on both the
theft and capital murder charges and secured his temporary custody on December
1, 1983.  Four days later, Relator pleaded guilty to the theft charge and
received a thirty-year sentence to run concurrently with his forty-five-year
federal sentence.  Several days later, the State dismissed the capital murder
charge and returned Relator to federal custody.  Twenty-five years later, the
State charged Relator with murder based on the same criminal transaction as the
1983 capital murder charge.

In
March and June 2010, Respondent conducted hearings on Relator’s motion to quash
the 2008 indictment.  In denying Relator’s requested relief, Respondent entered
findings of fact and conclusions of law.  In briefing to this court, Relator
and the State agree that certain, undisputed facts can be derived from
Respondent’s October 27, 2010 order:

·       
On
January 9, 1983, the State (through the Denton County District Attorney’s
Office) charged Relator with the unrelated offenses of theft and capital
murder.

 

·       
At
the time of the 1983 indictment, Relator was in federal custody on an unrelated
bank robbery charge.  The State lodged a detainer against Relator under the
IADA and obtained his temporary custody on December 1, 1983, to face the theft
and capital murder charges.

 

·       
On
December 5, 1983, Relator pleaded guilty to the State’s theft charge and
received a thirty-year prison sentence, to run concurrently with his forty-five-year
federal sentence. 

 

·       
On
December 12, 1983, the State dismissed the capital murder charge and
subsequently returned Relator to federal custody.  The State’s Motion to
Dismiss does not specify whether the case was dismissed with or without
prejudice.  The ground listed for dismissal was that the defendant “was convicted
in another case.”

 

·       
On
November 13, 2008, the State indicted Relator for murder (based on the same
criminal transaction that had earlier formed the basis of the 1983 capital
murder charge).[3]  

 

·       
On
April 2, 2009, the State arrested Relator, who had been released from federal
custody.  

 

Respondent
concluded (1) that the IADA provides no legal basis to bar the State from
prosecuting Relator on the current murder charge and (2) that the State’s
indictment does not violate any of the IADA provisions because “the Court has
no case law supporting the Defendant’s interpretation of the IAD[A] and the
Court finds that the State’s actions do not warrant any interpretive expansion
of the IAD[A].”

II. Standard of Review

Relator
asks for both mandamus and prohibition relief.  The “essential difference”
between a writ of prohibition and a writ of mandamus is that 

the former issues to
prevent the commission of a future act whereas the latter operates to undo or
nullify an act already performed; the former will not be granted when the act
sought to be prevented is already done, but will lie when such an act is not a
full, complete and accomplished judicial act. 

 

Wade
v. Mays, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985).  We address
both types of relief as Relator seeks to have us (1) vacate Respondent’s order
denying Relator’s motion to quash the 2008 indictment and (2) order Respondent
to dismiss the 2008 indictment (to prevent prosecution of the 2008 murder
charge against him).

The
traditional test for determining whether mandamus or prohibition relief is
appropriate requires Relator to establish (1) that he has no other adequate
legal remedy to redress his alleged harm and (2) that what he seeks to compel
is a ministerial act, not involving a discretionary or judicial decision.[4] 
Levario, 306 S.W.3d at 320.  The court of criminal appeals has held that
the “ministerial act” requirement “is satisfied if the relator can show he has
‘a clear right to relief sought’—that is to say, ‘when the facts and
circumstances dictate but one rational decision’ under unequivocal,
well-settled (i.e., from extant statutory, constitutional, or case law
sources), and clearly controlling legal principles.”  Id. at 320 n.6
(quoting State ex rel. Young v. Sixth Judicial Dist. Court of Appeals,
236 S.W.3d 207, 210 (Tex. Crim. App. 2007)); see Lykos, 330 S.W.3d at
907.

III. Interstate
Agreement on Detainers Act

 

Article
I of the IADA sets forth the reasons for the IADA’s creation, including that

charges outstanding
against a prisoner, detainers based on untried indictments, informations, or
complaints and difficulties in securing speedy trial of persons already
incarcerated in other jurisdictions, produce uncertainties which obstruct
programs of prisoner treatment and rehabilitation. 

 

Tex.
Code Crim. Proc. Ann. art. 51.14, Art. I.  This article adds that “it is the .
. . purpose of this agreement to encourage the expeditious and orderly
disposition of such charges and determination of the proper status of any and all
detainers based on untried indictments.”  Id.  Article IX provides that
the IADA “shall be liberally construed so as to effectuate its purposes.”  Id.
art. 51.14, Art. IX.

          The
IADA’s central provisions are Articles III and IV.  Under Article III, a prisoner
(against whom a detainer has been filed) can command a speedy disposition of
the charges giving rise to the detainer.  Id. art. 51.14, Art. III; United
States v. Mauro, 436 U.S. 340, 351, 98 S. Ct. 1834, 1842 (1978).  Under
Article IV, which applies in the instant case, a prosecutor (who has lodged a
detainer against a prisoner in another state) can secure the prisoner’s
presence for disposition of the outstanding charge.  Tex. Code Crim. Proc. Ann.
art. 51.14, Art. IV; Mauro, 436 U.S. at 351, 98 S. Ct. at 1843.

Article
IV(c) specifies that the receiving State shall begin the prisoner’s “trial . .
. within one hundred and twenty days of the arrival of the prisoner in the
receiving State.”  Tex. Code Crim. Proc. Ann. art. 51.14, Art. IV(c).  Article
IV(e) prohibits return of the individual to the sending State before that trial
is complete:

If a trial is
not had on any indictment, information, or complaint contemplated hereby prior
to the prisoner’s being returned to the original place of imprisonment pursuant
to Paragraph (e) of Article V hereof, such indictment, information, or
complaint shall not be of any further force or effect, and the court shall
enter an order dismissing the same with prejudice.

 

Id. art. 51.14, Art. IV(e).

Article
V(c) provides:

 

[I]n the event that
an action on the indictment, information, or complaint on the basis of which
the detainer has been lodged is not brought to trial within the period provided
in Article III or Article IV hereof, the appropriate court of the jurisdiction
where the indictment, information, or complaint has been pending shall enter an
order dismissing the same with prejudice, and any detainer based thereon shall
cease to be of any force or effect. 

 

Id. art. 51.14, Art. V(c). 

 

IV.
Parties’ Contentions

Relator
asserts that the literal language of the IADA bars any further criminal
proceedings when a defendant is returned to the original place of imprisonment
before being brought to trial on the indictment (the basis of which the
detainer has been lodged).  Relator asserts therefore that, under the
“unforgiving and commanding language of [the] IADA and court interpretations,”
Respondent has the ministerial duty to dismiss the 2008 murder indictment. 
Further, Relator asserts that he has no right of appeal from Respondent’s
actions and that no other adequate remedy at law is available.

The State argues that the IADA
provisions are inapplicable in this case.  Specifically, the State asserts that
it “expeditiously disposed of” the capital murder indictment eleven days after
Relator arrived in Texas, and therefore, an “untried indictment” no longer
existed against Relator when the State sent him back to Kansas—a condition
precedent to application of the IADA.[5]  The State asserts that
this is a question of first impression in Texas and federal jurisprudence
because the IADA does not directly address the instant issue and because there
is no controlling authority on point.  Therefore, Respondent’s decision—to deny
Relator’s motion to quash the indictment—was discretionary.  Citing Smith v.
Gohmert, the State further asserts that Relator has an adequate remedy by
direct appeal if he is ultimately convicted of murder.  962 S.W.2d 590, 593
(Tex. Crim. App. 1998) (holding that a defendant’s right to appeal from
conviction was an adequate remedy at law for a violation of the constitutional
right to speedy trial).[6] 

V. Analysis

A. 
The Statutory Language

When
construing a statute, reviewing courts seek to effectuate the legislature’s
intent in enacting it.  Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim.
App. 1991); Adams v. State, 270 S.W.3d 657, 660 (Tex. App.—Fort Worth
2008, pet. ref’d).  The plain meaning of the words should be applied unless the
language is ambiguous or application of the statute’s plain language would lead
to an absurd result that the legislature could not have intended.  Boykin,
818 S.W.2d at 785; Adams, 270 S.W.3d at 660.

Article
51.14 provides that “[i]f trial is not had” on an indictment “contemplated
hereby” prior to returning the prisoner to his original place of imprisonment,
the indictment “shall not be of any further force or effect,” and “the court
shall enter an order dismissing the same with prejudice.”  Tex. Code Crim.
Proc. Ann. art. 51.14, Art. IV(e).  The statute makes clear that, regarding any
indictment that formed the basis of the detainer, (1) the State must proceed to
trial within 120 days of the prisoner’s arrival (unless extended for good
cause), or (2) “the court shall enter an order dismissing the same with
prejudice.”  Id.  The statute does not contemplate the dismissal of
indictments without prejudice.[7]  Indeed, the State’s
proposed interpretation of the statute—i.e., that the State is permitted to
exempt itself from the IADA by dismissing (in good faith) an indictment without
prejudice before returning the prisoner to the sending state prior to the
expiration of the requisite time period—disregards the plain meaning of
Articles IV(e) and V(c).  See Tex. Gov’t Code Ann. '
311.021(2) (Vernon 2005) (“In enacting a statute, it is presumed that . . . the
entire statute is intended to be effective.”).  This interpretation also
disregards the IADA’s stated purpose, which is “to encourage the expeditious
and orderly disposition of [outstanding charges against a prisoner].”  Tex. Code
Crim. Proc. Ann. art. 51.14, Art. I. 

B. 
Case Law Addressing the Statute  

Ample authority supports the
conclusion that the trial court in 1983 had a mandatory duty to dismiss the
capital murder indictment with prejudice because the State failed to proceed to
trial against Relator before returning him to federal prison.  For instance, in
Mauro, the Supreme Court held that “the detainer remains lodged against
the prisoner until the underlying charges are finally resolved.”  436
U.S. at 362, 98 S. Ct. at 1848 (emphasis added); see Ex parte Torres,
943 S.W.2d 469, 473 (Tex. Crim. App. 1997) (analyzing the phrase “final
disposition” in the context of article 11.07, ' 4 of the code of criminal procedure and noting that the IADA “appears to
contemplate a ‘final disposition’ as being either an adjudication on the merits
or a dismissal of pending charges with prejudice”).  Dismissing an indictment
without prejudice does not finally resolve the charges.[8]


Moreover,
the Supreme Court’s holding in Bozeman is instructive.  533 U.S. at 153,
121 S. Ct. at 2084–85.  Bozeman was serving a federal prison sentence in
Florida when a district attorney in Alabama sought his temporary custody under Alabama’s
IADA to arraign him on firearms charges and to appoint counsel.  Id. at
151, 121 S. Ct. at 2083.  Bozeman spent the night in the county jail, appeared
in local court with local counsel the next morning, and was returned to federal
prison that evening.  Id., 121 S. Ct. at 2083–84.  When the county
brought him back for trial one month later, Bozeman moved to dismiss the state
charges because he had been returned to the original place of imprisonment
prior to trial being had on state charges in violation of the IADA.  Id.,
121 S. Ct. at 2084.  Bozeman was convicted, and the trial court subsequently
denied the dismissal motion.  Id. at 152, 121 S. Ct. at 2084.  An
intermediate appellate court affirmed the conviction.  Id., 121 S. Ct.
at 2084.  The Alabama State Supreme Court reversed, holding that the literal language
of the IADA controlled and required dismissal of the state charges.  Id.,
121 S. Ct. 2084.  The dissenters argued that the violation was merely
“technical” and did not require dismissal.  The United States Supreme Court
affirmed the Alabama Supreme Court, holding that

the language of the
Agreement militates against an implicit exception, for it is absolute.  It says
that, when a prisoner is “returned” before trial, the indictment, information,
or complaint “shall not be of any further force or effect, and the court
shall enter an order dismissing the same with prejudice.”  Art. IV(e)
(emphasis added).  “The word ‘shall’ is ordinarily ‘the language of command.’” Anderson
v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (quoting Escoe
v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935)).   

 

Bozeman,
533 U.S. at 153, 121 S. Ct. at 2084–85.[9]  

While
the State distinguishes Bozeman factually (arguing that Alabama returned
Bozeman to federal prison with an untried indictment still pending), the State
does not address the broader application of the opinion’s holding.  In fact,
the State’s argument—that the IADA does not apply because the 1983 indictment
was dismissed in “good faith” due to an inability to prove its case rather than
to avoid the provisions of the IADA (which it acknowledges would have been
improper)—advocates the type of exception that the Bozeman Court
prohibits.[10]  

          The
court of criminal appeals’s opinion in State v. Williams (in which the
court holds that the IADA does not violate the Separation of Powers Clause of
the Texas constitution) refutes the State’s interpretation of the IADA: 

Because the
prosecutor has no extraterritorial power, he gains a benefit by using the
provisions of the IADA—access to a defendant whom he would otherwise have no
power to reach.  The Legislature was not obliged to give the prosecutor that
benefit.  Having done so, we do not believe it unreasonable for the Legislature
to impose some conditions.  Moreover, the prosecutor who makes a request under
the IADA knows or should know, when he makes that request, that he will have a
time limit in which to try the prisoner.  If the prosecutor needs time to
investigate, he can simply refrain from filing a request until he has gathered
enough information to proceed quickly to trial.  Further, if unexpected events
prevent trying the case within the 120 day time limit, the trial court may
grant a continuance upon a showing of good cause in open court with the
prisoner or his counsel present. 

 

938
S.W.2d 456, 462 (Tex. Crim. App. 1997).

Further,
in Engle v. Coker, the Tenth Court of Appeals held that the purposes of
the IADA are such that, while a receiving state may reindict, it must adhere to
the original time period.  820 S.W.2d 247, 251 (Tex. App.—Beaumont 1991, orig.
proceeding) (citing Bokemeyer v. State, 624 S.W.2d 909, 912 (Tex. Crim.
App. 1981)).  The court explained:

The new indictment
does not start the clock ticking anew, because the temporary custody is based
upon the original indictment.  Any other interpretation of the rule would
nullify the time limitations, because once the receiving state has obtained
custody, it would then be able to permanently hold the defendant in temporary
custody by simply reindicting him every 180 days [under article III].

 

Id.

In
its filing with this court, the State discusses “two noncontrolling cases from
other states that manifested similar, but distinguishable, circumstances.”   See
Marshall v. Superior Court, 228 Cal. Rptr. 364, 367–68 (Cal. App. 4th Dist.
1986); People v. Christensen, 465 N.E.2d 93, 97 (Ill. 1984).[11] 
Relator responds that these cases illustrate “how other jurisdictions have
given relief to defendants in similar situations.”  We find Marshall to
be instructive (while noting that its focus is on IADA’s Article III).[12] 
Specifically, Marshall was charged around the same time with separate murders
in California and Texas and convicted and sent to prison in Texas on an
unrelated felony.  Marshall, 228 Cal. Rptr. at 365.  Marshall then
entered into an agreement with the prosecutors in Texas and California to plead
guilty to both pending murder charges and serve his time in California.  Id.
 He then demanded speedy disposition of the California charge under Article III
of California’s IADA.  Id. at 366.  Once in California, Marshall refused
to plead guilty to murder, after which the People dismissed the case.  Id. 
Marshall was returned to Texas to stand trial on his other murder charge,
although ultimately that charge was dismissed.  Id.  Ten months later,
Marshall was returned to California and arraigned in a new complaint that
charged the previously alleged murder.  Id.  Marshall moved to dismiss
the new complaint under the IADA, asserting that the first complaint had to
have been dismissed with prejudice.  Id.  When the trial court refused,
Marshall sought a writ of prohibition in the intermediate appellate court to
prevent further prosecution of the charges under the IADA.  Id.  The
appellate court granted relief, holding that dismissal was mandatory under such
circumstances because “[b]y the unambiguous language of [Article III of the
IADA],” Marshall was “entitled to be brought to trial within 180 days of his
demand, and also to have the proceedings resolved in one uninterrupted
episode.”  Id. at 367–68.

C.
Ministerial Duty Under the Statute and Case Law

          The
parties do not dispute the relevant facts in this case as they pertain to the
IADA, and these facts are supported by documentary evidence.  See,
e.g., Votta, 299 S.W.3d at 135 (holding that in some instances, a
court may determine whether the requirements of the IADA were met by examining
relevant paperwork).  Further, the statute and the existing case law establish
(such that the issue cannot be considered debatable) that, in 1983, the trial
court had a mandatory duty to dismiss with prejudice the capital murder
indictment pending against Relator.  For this reason, Respondent has a
ministerial duty to dismiss the 2008 murder indictment.  See Levario,
306 S.W.3d at 320 n.6 (quoting Young, 236 S.W.3d at 210).  To the extent
this matter can be considered one of first impression, it can nonetheless be
the subject of mandamus relief because it is not an unsettled or uncertain
question of law.  See State ex. rel. Rosenthal v. Poe, 98 S.W.3d 194,
199 (Tex. Crim. App. 2003) (holding that a matter is not necessarily one
involving judicial discretion simply because it involves an issue of first
impression); State ex rel. Hill v. Court of Appeals, 34 S.W.3d 924, 928
(Tex. Crim. App. 2001) (reaffirming that an unsettled question of law bars writ
relief).

D.
No other adequate legal remedy

The
court of criminal appeals has indicated (albeit in dicta) that mandamus may be
a proper remedy under circumstances similar to the instant case.  See Ex
parte Doster, 303 S.W.3d 720, 727 (Tex. Crim. App.), cert. denied,
130 S. Ct. 3397 (2010).  In Ex parte Doster, the court
held that a defendant’s pretrial habeas corpus application, followed by an
interlocutory appeal, is not the appropriate vehicle for raising a claim that
an indictment should be dismissed due to the State’s failure to comply with the
IADA.  Id. at 721.  The court noted:

Of course, if it is
indeed clear that the IAD[A] has been violated, a pretrial disposition of the
claim would most satisfy the underlying purposes of the IAD[A]. . . . If the
trial court rules against the defendant and the defendant’s entitlement to
relief is indisputable, as a matter of fact and law, then mandamus might be an
appropriate remedy.  

 

Id. at
727.

At
least two appellate courts have conditionally granted mandamus relief and
compelled a trial court to dismiss an indictment with prejudice based on an
IADA violation.  See Engle v. Coker, 820 S.W.2d at 250–51; In
re Ryan, No. 10-04-00128-CR, 2004 WL 2365239, at *1 (Tex. App.—Waco 2004,
orig. proceeding) (mem. op., not designated for publication).  In Engle v.
Coker, the Beaumont Court of Appeals explained:  “A remedy at law may
exist, yet be so uncertain, tedious, burdensome, slow, inconvenient,
inappropriate, or ineffective as to be deemed inadequate.”  820 S.W.2d at 251
(citing Smith v. Flack, 728 S.W.2d 784, 792 (Tex. Crim. App.
1987)).  The court held that where the State failed to try the relator within
the IADA’s statutorily defined time frame, “a trial would be a useless act” and
that “direct appeal is not an adequate remedy.”  Id. Similarly here,
although Relator could challenge an eventual conviction on direct appeal, our
analysis demonstrates that Relator has established a clear right to relief and
that, therefore, a trial would be a “useless act.”  Id.  Thus, petitions
for a writ of mandamus and prohibition are appropriate vehicles for Relator to
challenge Respondent’s order denying Relator’s request to dismiss the 2008
murder indictment and to request that the State be precluded from prosecuting
him on the pending 2008 murder indictment.

VI. Conclusion

We
conditionally grant mandamus and prohibition relief.  We lift our January 25,
2011 Order staying the trial proceedings in cause number F-2008-2397-EA and
order Respondent to vacate the October 27, 2010 Order denying Relator’s motion
to quash the 2008 murder indictment.  If Relator’s motion to quash is not
granted and the 2008 indictment is not dismissed with prejudice within a
reasonable time, the writs shall issue.  

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER, WALKER, and MEIER, JJ.

 

DELIVERED:  April 4, 2011









[1]This court has received
(1) Relator’s Petition for Writs of Prohibition and Mandamus and attached
Appendix; (2) the State’s Response and attached Appendix; (3) Relator’s
Response; and (4) the Reporter’s Record and exhibits from the March 18, 2010
and June 10, 2010 hearings.





[2]Because we conditionally
grant Relator relief on the IADA issue, we do not address his double jeopardy
claim.





[3]The State explains that it
reindicted the case because 2008 DNA testing linked Relator to the murder.





[4]The standards for mandamus
and prohibition relief are essentially the same.  Simon v. Levario, 306
S.W.3d 318, 320 n.3 (Tex. Crim. App. 2009) (citing Wade, 689 S.W.2d at 897).





[5]The State emphasizes that
it dismissed Relator’s capital murder indictment in 1983 in good faith (based
on a perceived inability to prove the facts of the case) and that it did not
attempt to circumvent the dictates of the IADA.





[6]While the State notes that
the court of criminal appeals and this court have addressed IADA claims on
direct appeal, these cases do not address whether the claims could have been
raised in a petition for writ of mandamus.  See, e.g., Lara v.
State, 909 S.W.2d 615, 616 (Tex. App.—Fort Worth 1995, pet. ref’d); McDonald
v. State, 846 S.W.2d 954, 955 (Tex. App.—Fort Worth 1993, pet. ref’d).  The
State also cites Giles v. State, 921 S.W.2d 235 (Tex. Crim. App. 1996),
which is a dissenting opinion to the court of criminal appeals’ refusal to
grant Giles’s petition for discretionary review. 





[7]In contrast, in 1988
Congress amended the federal IADA to provide that, when the United States is
the receiving state, a case may be dismissed with or without prejudice
depending on the “seriousness of the offense,” the “facts and circumstances of
the case,” and the “impact of a reprosecution on the administration of the
agreement” and “on the administration of justice.”  Bozeman, 533 U.S. at
156, 121 S. Ct. at 2086 (citing 18 U.S.C. App. 2 '
9(1)).





[8]See generally United
States v. Knight, 562 F.3d 1314, 1325–26 (11th Cir.), cert. denied,
130 S. Ct. 192 (2009) (“Because the dismissal of Knight’s first indictment
without prejudice did not produce a final resolution of the charges against
him, the original detainer against Knight remained in effect: ‘The detainer
remains lodged against the prisoner until the underlying charges are finally
resolved.’”).





[9]The Supreme Court noted
that the IADA is a congressionally sanctioned interstate compact the
interpretation of which presents a question of federal law and is subject to
federal construction.  Bozeman, 533 U.S. at 149, 121 S. Ct. at 2082
(citing New York v. Hill, 528 U.S. 110, 111, 120 S. Ct. 659, 662
(2000)); Cuyler v. Adams, 449 U.S. 433, 442, 101 S. Ct. 703, 708–09
(1981)).  Cf. Ex parte Sanchez, 918 S.W.2d 526, 527 (Tex. Crim. App.
1996) (“The IAD[A] is a state law as well as a law of the United States.”).





[10]In Bozeman, the
State of Alabama admitted violating the IADA under a literal interpretation of
the statute, while here, the State argues that it did not violate the IADA.





[11]The State asserts that,
in both Marshall and Christensen, the prosecutors “essentially
dismissed the relevant indictment to circumvent the IADA, knowing the case
would be reindicted,” while here, there is no suggestion that the State ever
intended to reindict the dismissed capital murder indictment.  We do not find
this distinction material to our analysis, and we note that the Marshall court
did not attribute bad faith motives to the prosecutors.  Marshall, 228
Cal. Rptr. at 368.





[12]While Article III
(through which the prisoner initiates the proceedings) and Article IV (through
which the State initiates the proceedings) address different circumstances,
Article V(c) provides that, if an indictment (that formed the basis of the
detainer) is not brought to trial “within the period provided in Article III or
Article IV,” the court shall enter an order dismissing the indictment with
prejudice.  Tex. Code Crim. Proc. Ann. art. 51.14, Arts. III, IV, V(c).